THE STATE EX REL. BELL TELEPHONE COMPANY, Respondent, v. HENRY FLAD ET AL., Appellants.

**St. Louis Court of Appeals, October 26, 1886.**

1. TELEPHONE COMPANIES—RIGHTS AND LIABILITIES.—Telephone companies organized under the laws of this state may set their poles along the public streets of cities, subject to regulation by ordinance as to the location and kind of posts, piers, and abutments, and the height of the wires.

2. ———— MANDAMUS—ST. LOUIS—LIMITATION OF POWERS.—The board of public improvements of the city of St. Louis can not impose conditions other than those imposed by statute and ordinance upon telephone companies, and where such companies have complied with all the lawful requirements, the board will be compelled by mandamus to issue a permit for the erection of poles on the streets.

APPEAL from the St. Louis Circuit Court, DANIEL DILLON, Judge.

*Affirmed.*

LEVERETT BELL, for the appellants.

HITCHCOCK, MADILL & FINKELNBURG, for the respondent.

THOMPSON, J., delivered the opinion of the court.

This is a proceeding by mandamus to compel the board of public improvements of the city of St. Louis to grant a permit, or permits, for erecting telephone poles upon certain streets and alleys in the city of St. Louis, in accordance with the provisions of an ordinance of the city numbered 11,604, by which the subject is regulated. A demurrer to the return was sustained by the circuit court, and, the defendants declining to plead further, a peremptory writ was ordered to issue.

The question for decision, therefore, arises upon the legal sufficiency of the return, and it is this: Whether the board of public improvements have the power to oblige a corporation, formed under the laws of this state (under article 5, chapter 21, of the Revised Statutes, relating to the incorporation of telegraph and telephone companies), which may desire to erect telephone poles and establish telephone wires in the city of St. Louis, to enter into a stipulation (1) "to grant to any other company requiring electric wires for its business, the right to use one or more cross-bars of its poles at an annual rent of forty cents for half a cross-bar, and sixty cents, for a full cross-bar, except in cases where the party asking for room on another company's poles is itself charging that company a higher rent per cross-bar on its own poles heretofore erected, in which case an equal rental may be demanded for wires on poles erected under these rules." And also (2) "that it will not place any more wires or cables on its own poles, or on the poles of other companies, than are actually necessary for its business, and that it will promptly remove any unused wires from the poles." The refusal of the relator to file its acceptance in writing of these conditions is, the return shows, the sole reason why the board refuses to grant the permit or permits prayed for.

The question is one of extreme simplicity. By section 879 of the Revised Statutes, it is provided as follows: "Companies organized under the provisions of this article, for the purpose of constructing and maintaining telephone or magnetic telegraph lines, are authorized to set their poles, piers, abutments, wires, and other fixtures, along and across any of the public roads, streets, and waters of this state, in such manner as not to incommode the public in the use of such roads, streets, and waters." The only limitation imposed by the legislature upon this privilege relating to the use of the streets and alleys of cities and towns for telephone posts is embodied in section 888 of the Revised Statutes,

which is in the following language: "The mayor and aldermen, or board of common council of any city, and the trustees of any incorporated town, through which the lines of any telephone or telegraph company are to pass; may, by ordinance, or otherwise, specify where the posts, piers, or abutments, shall be located, the kind of posts that shall be used, the height at which the wires shall be run; and such company shall be governed by the regulations thus prescribed; and after the erection of said telephone or telegraph lines, the said mayor and aldermen, or board of common council, and the trustees of any incorporated town, shall have power to direct any alteration in the location or direction of said posts, piers, or abutments, and also in the height at which the wires shall run, having first given such company or its agents opportunity to be heard in regard to such alteration." It will be seen that this limitation relates exclusively to three subjects: 1. The *place where* the posts, piers, or abutments shall be located. 2. The *kind* of posts that shall be used. 3. The *height* at which the wires shall be run.

Whether any power exists in the city of St. Louis under the provisions of its peculiar charter, which emanates from the constitution, and not from the legislature, to impose any additional restrictions, we shall not inquire, because the question does not arise upon this record. The pleadings disclose that the city has not attempted to exercise any such power, to which objection is made by the relators, although the board of public improvements has.

The board of public improvements is, as the return shows, a ministerial board of the city of St. Louis, whose duties, by the terms of the charter, are to be specified by ordinance. It also shows that the board has been empowered by ordinance to make such laws and regulations for its business and government, not inconsistent with the ordinances of the city, as it shall deem expedient. But this is merely the grant of a power

to make by-laws and rules for the transaction of its own business as a board, and manifestly confers upon it no power to establish such regulations in respect of telephone companies as the ones in question.

The power, if it exists, must then be sought in other ordinances, and none has been pleaded which undertakes to confer it. Ordinance number 11,604, which is set out in the return, nowhere undertakes to confer the power to impose such regulations. Its provisions have been accepted by the relators, and no objection is made to them. Ordinances 11,976 and 12,723, by their terms, regulate the placing of wires, tubes, or cables conveying electricity for the production of *light* or *power* along the streets, alleys, and public places of the city of St. Louis, and manifestly were not intended to have any application to the subject of telephone poles or wires. The provisions of ordinance number 12,724, relating to telephone companies, have been accepted by the relator, and contain nothing which is pertinent to the question. Ordinance 12,733 relates merely to the license tax required to be paid by telephone companies, and, although set out in the return, is likewise irrelevant.

These are all the sources of power set up in the return, and, as they manifestly do not confer upon the board of public improvements the power to establish the regulations complained of, it must be concluded that no such power exists. As no power exists on the part of the board to impose these restrictions, the inquiry whether they are reasonable or unreasonable is totally irrelevant.

Nor is the argument that the relator, in accepting these regulations, entered into a binding contract with the city to abide by them, which it had not the power subsequently to withdraw, at all tenable. As the board of public improvements, in imposing these regulations, were not acting in pursuance of any power vested in them by charter or ordinance, they were not acting as agents of the city. An acceptance of these conditions

by the relator, if otherwise sufficient to create a contract, would not, therefore, create a contract between it and the city. Moreover, the city is not, as the supreme court necessarily held when it remanded the cause to us for decision, after we had transferred it thence, a party to this proceeding, and is not claiming any rights against the relator, by contract or otherwise.

It is not worth while to argue the question that an agreement by the relators to abide by conditions which the board of public improvements had no power to annex to the privilege granted to the relator by the legislature, would not conclude it from a subsequent withdrawal of their agreement, especially where the city in the meantime, had done no act, or in any way changed position on the faith of such agreement so as to be prejudiced with its withdrawal.

The case then, nakedly, stands thus : The legislature has granted to this relator the privilege of erecting its posts and wires in the streets of the city of St. Louis, subject to the power of the city to impose the three conditions above named. The city has not, by ordinance, attempted to impose any other conditions which are objected to, nor has it empowered the board of public improvements to do so.. Nevertheless the board—its members, no doubt, acting conscientiously, and with the faithful purpose of promoting the public interests— have attempted, of their own motion, to impose the two additional restrictions above set out, and to require the relator to accept the same before granting to it a permit or permits, to erect its poles and wires upon the streets and alleys named. This they could not do. And as they have made the refusal of the relator to accept these conditions the sole ground of their refusal to grant the permit or permits prayed for, it is a case where the legal right of the relator is clear ; and, therefore, the judgment of the circuit court sustaining the demurrer to the return, and awarding a peremptory writ of mandamus, must be affirmed. All the judges concur.