## The People v. Abijah Eaton.

*Constitutional law—Highways—Telegraph poles—Additional servitude—Compensation.*

1. The placing of telegraph poles along a public highway is not an additional servitude upon the land of adjacent proprietors.

2. The statutes of this State (How. Stat. chaps. 100, 101), which authorize the construction along the public highways of telegraph lines by individuals and unincorporated associations, and by telegraph companies whose incorporation is provided for by the chapter last cited, are not in conflict with article 15, § 9, of the Constitution, which provides that "the property of no person shall be taken by any corporation for public use without compensation being first made or secured in such manner as may be prescribed by law."

Error to Barry. (Smith, J.) Argued February 1, 1894. Decided May 18, 1894.

Respondent was convicted of assault and battery, and sentenced to pay a fine of $20, or stand committed to the Barry county jail until the fine should be paid, not exceed-

ing 30 days.   Judgment affirmed.   The facts are stated in
the opinion.

*William O. Lowden* and *Charles G. Holbrook,* for re-
spondent.

*A. A. Ellis,* Attorney General, and *James A. Sweezey,*
Prosecuting Attorney, for the people.

LONG, J.   Respondent was convicted of an assault and
battery upon L. B. Bentley.   It appears that Bentley, in
company with three other men, were in the act of digging
holes to set telegraph poles in the highway in front of the
farm of respondent.   Respondent forbade them doing so,
and ordered them to desist, which they refused, whereupon
he pushed Bentley down a slight embankment.   It is not
claimed that any serious harm was done him, or that
respondent used any more force than was necessary to stop
the work.   It was claimed on the trial that Mr. Bentley
and his companions represented, and were the employés of,
a certain company, known as the Barry County Telegraph
Association, incorporated under the provisions of chapter
101 of Howell's Statutes, and that they informed respond-
ent that they were erecting a telegraph line along the
highway, and were acting for an association, and that the
State gave them the right to do so.   The articles of asso-
ciation of the company were not on file with the Secretary
of State at the time of the assault complained of, but
they had been signed in due form of law, and were sub-
sequently acknowledged and filed as provided by law.

The statutes of this State relating to electric telegraph
lines, so far as they appear to be material to this case,
may be briefly summarized as follows:   Chapter 100, How.
Stat., being Act No. 4, Laws of 1847, as amended in
1849 and 1873, is, "An act authorizing any persons to

construct lines of electric telegraph in the State of Michigan." Section 1 provides:

"That any person or persons may be, and they are hereby, authorized to construct and maintain lines of electric telegraph, together with all necessary fixtures appurtenant thereto, from point to point upon and along any of the public roads, highways, or railroads   *   *   *   of this State,   *   *   *   or upon or over the land of any individual, the owner of any land through which said telegraph line may pass, and railroad corporation on whose right of way the same may be constructed, having first given consent: *Provided*, that the same shall not in any instance be so constructed as to incommode the public in the use of said roads, highways, railroads, or bridges.   *   *   *"

Chapter 101, being Act No. 59, Laws of 1851, as amended in 1863, 1873, and 1875, is, "An act to authorize the formation of telegraph companies." Sections 1, 2, 3, and 4 provide for the manner of organization of such companies, and their general powers. Section 5 provides that—

"Such association is authorized to enter upon, and construct and maintain lines of telegraph through, along, and upon any of the public roads and highways, or across or under any of the waters, within the limits of this State, by the erection of the necessary fixtures, including posts, piers, or abutments for sustaining the cords or wires of such lines: *Provided*, that the same shall not be so constructed as to incommode the public use of said roads or highways, or injuriously interrupt the navigation of said waters:   *   *   *   *And provided further*, that this act shall not be construed to authorize any such association to injure, deface, tear, cut down, or destroy any tree or shrub planted along the margin of any highway in this State, or purposely left there for shade or ornament.   *   *   *   *   *   *",

Section 6 provides for the appointment of commissioners by the circuit court to assess damages, on the application of any person through whose land said lines shall pass, who shall consider himself aggrieved or damaged thereby.

The principal question in this case is whether these acts

conflict with article 15, § 9, of the Constitution, which provides:

"The property of no person shall be taken by any corporation for public use without conpensation · being first made or secured in such manner as may be prescribed by law."

Is the placing of telegraph poles along a public highway an additional servitude upon the land of the adjacent proprietor? Public highways are under legislative control. Cooley, Const. Lim. 588. They are for the use of the public in general, for passage and traffic, without distinction. The restrictions upon their use are only such as are calculated to secure to the general public the largest practicable benefit from the enjoyment of the easement. When the highway is not restricted in its dedication to some particular mode of use, it is open to all suitable methods. *Macomber v. Nichols*, 34 Mich. 212, 216. It has been settled in this State that lands taken or granted for public highways are so taken or granted for all the purposes for which they may be used for the benefit of the public, for the passing and repassing of travelers thereon, and for the transportation of passengers by stage coach, omnibus, or street cars propelled by horses, steam, or electricity, and that the laying of tracks for such street cars is not an additional servitude upon the lands of adjacent proprietors.

In *Detroit City Ry. v. Mills*, 85 Mich. 634, the defendants threatened to cut down and destroy the poles erected for stringing wire for the use of an electric street railway, and the claim was made by the defendants that they had the right to remove such poles because they were an additional servitude. It was held that they had no such right; that the erection of poles for such a road was in the furtherance of public travel; and that, to constitute an additional servitude, there must be an injury to the pres-

ent use and enjoyment of the land. See, also, *People v: Railway Co.*, 92 Mich. 522; *Dean v. Railway Co.*, 93 Id. 330.

It is difficult to see any distinction between the use of the highway for electric railway poles and for poles erected for the use of telegraph or telephone companies. In commenting upon this claimed distinction, Judge Dillon, in his work on Municipal Corporations (4th ed. p. 893, note), says:

"The distinction is so fine as to be almost impalpable."

These telegraph construction acts have been in force in this State for many years, and this is the first time in the history of the State, so far as I have discovered, where it has been claimed that the placing of such poles in the highway is an additional servitude. We are aware that in some states the doctrine is laid down that the placing of such poles creates an additional servitude upon the fee, but there are many cases holding the other way. *Pierce v. Drew*, 136 Mass. 79, *Julia Building Ass'n v. Telephone Co.*, 88 Mo. 258, and *State v. Flad*, 23 Mo. App. 185, hold that an additional servitude is not created; and, we think, upon better reasoning. These cases accord with the views of this Court in *Detroit City Ry. v. Mills, supra,* and other cases in this State relative to the use of the street for street-railway purposes. If damage follows from the erection of such poles, the acts provide a method of settling that question.

We think there is nothing in the claim that the articles of association were not filed at the time of the assault. Under chapter 100, any private person may erect telegraph poles along the highway, under certain restrictions.

When these lands were taken or granted for public highways, they were not taken or granted for such uses only as might then be expected to be made of them, by the com-

mon methods of travel then known, or for the transmission of intelligence by the only methods then in use, but for such methods as the improvement of the country, or the discoveries of future times, might demand. The parties setting these poles were acting under color of legal right. The statute under which they acted is not in conflict with the provision of the Constitution above cited. It would be a great calamity to the State if, in the development of the means of rapid travel, and the transmission of intelligence by telegraph or telephone communication, parties engaged in such enterprises were compelled to take condemnation proceedings before a single track could be laid or a pole set. The Legislature certainly has never so regarded this provision of the Constitution, and never till now, when more than 40 years have elapsed since the passage of these acts, has any one supposed that such a construction was to be placed upon the provision of the Constitution.

The conviction must be affirmed.

GRANT, MONTGOMERY, and HOOKER, JJ., concurred with LONG, J.

McGRATH, C. J. (dissenting). I cannot concur in the opinion of Mr. Justice LONG. I think that Mr. Dillon, in his work on Municipal Corporations (4th ed. § 698a), lays down the correct rule. He says:

"On the whole, the safer and perhaps sounder view is that such a use of the street or highway, attended, as it may be, especially in cities, with serious damage and inconvenience to the abutting owner, is not a street or highway use, proper, and hence entitles such owner to compensation for such use, or for any actual injury to his property caused by poles and lines of wire placed in front thereof."

The theory upon which it has been held that the construction of street-railway tracks in streets is not an additional servitude is that the purpose of the tracks is to

facilitate travel upon the street, and the cases which support the right to erect trolley poles have been put upon the ground that the poles and wires are directly ancillary to such use of the street. This class of cases makes a distinction between trolley poles and wires, which are incidents of that system of transportation, and telegraph and telephone poles, which are not used to facilitate the use of the street. It is with reference to this attempted distinction that Mr. Dillon makes use of the language quoted by Mr. Justice LONG, and found in 2 Dill. Mun. Corp. (4th ed.) p. 893, note.

I think that the judgment should be reversed.