MICHIGAN TELEPHONE CO. *v.* CITY OF BENTON HARBOR.

1. MUNICIPAL CORPORATIONS — TELEPHONE COMPANIES — USE OF
   STREETS—POLICE POWERS.
       While a city, under 3 How. Stat. § 3718*d*, giving telephone
       companies the right to construct their lines along any street
       or highway of the State, provided they shall not injuriously
       interfere with other public uses, may regulate the exercise of
       the right so as to prevent injury to other interests, it can im-
       pose such conditions only as are based on the police power.

2. SAME—STATUTES—REPEAL.
       Act No. 215, Pub. Acts 1895, which provides that cities incor-
       porated under said act may regulate or prohibit the placing
       of telephone poles and wires in or over the streets, does not
       repeal the general law relating to telephone companies (3
       How. Stat. § 3718*d*), giving such companies the right, under
       certain restrictions, to construct their lines along any street
       or highway of the State, but must be construed as conferring
       authority subject to the general law.

Appeal from Berrien; Coolidge, J. Submitted May 4,
1899. Decided October 17, 1899.

Bill by the Michigan Telephone Company against the
city of Benton Harbor to restrain interference with com-
plainant's poles and wires. From a decree dismissing the
bill, complainant appeals. Reversed.

. *Wells, Angell, Boynton & McMillan* (*N. A. Hamil-
ton*, of counsel), for complainant.

*F. H. Ellsworth* (*G. M. Valentine*, of counsel), for
defendant.

GRANT, C. J. This case in its facts differs in only one
particular from that of the same complainant against the
city of St. Joseph, *ante*, 502, the opinion in which is filed
simultaneously with this. In that case the records of the

common council showed a resolution adopted granting permission to the Telephone & Telegraph Construction Company, while in this case the records of the common council do not show that such permission was granted. These two cities are contiguous to each other,—separated only by a river. The work of the construction company in each was begun and carried on at the same time, and the construction company and its assignee, the complainant, have ever since been in the enjoyment of the same rights in Benton Harbor as in St. Joseph. The complainant presented a petition to the common council of Benton Harbor couched substantially in the same language, and asking for the same privileges, as it presented to the common council of the city of St. Joseph. The council denied the prayer of the petition. The court denied relief in this case, while granting it in the other, because the records of the council did not show the grant of permission, which it held was essential to the creation of a contract. The complainant, at the request of the council, furnished for the use of the city one telephone free of charge, and two other telephones at rates less than those charged to other subscribers for like service, which rates have been paid by the city. In the year 1893 complainant, on application of the city, granted permission to the city to carry its fire-alarm wires on the company's poles, which permission was accepted by resolution adopted by the council. The complainant gave evidence tending to show that the construction company, in February, 1881, presented a petition to the common council, and that it was notified by the clerk that permission had been granted. The city clerk testified that he could find no papers of any kind in his office, presented to the council from 1881 to 1887.

Complainant contends that a contract exists between it and the city, arising out of the establishment of its system by the permission of the municipality, and the maintenance thereof for many years, and that the defendant is now estopped to deny such contract. In the view we

take of the case, it is unnecessary to determine this question. Section 4 of Act No. 129, Pub. Acts 1883, providing for telephone and messenger-service companies, reads as follows:

"Every such corporation shall have power to construct and maintain lines of wire, or other material, for use in the transmission of telephonic messages, along, over, across, or under any public places, streets, and highways, and across or under any of the waters in this State, with all necessary erections and fixtures therefor: *Provided,* that the same shall not injuriously interfere with other public uses of the said places, streets, and highways, and the navigation of said waters; to construct, provide, and furnish instruments, devices, and facilities for use in the transmission of such messages; and to construct, maintain, and operate telephone exchanges and stations, and generally to conduct and carry on the business of providing and supervising communication by telephone, and also the business of furnishing messenger service in cities and towns." 3 How. Stat. § 3718*d.*

The statute also requires every such company to supply the public with telephones and telephonic service, to operate a telephone exchange, and to receive and transmit messages without discrimination, upon payment or tender of the usual or customary charges. Id. § 3718*i.*

The complainant is engaged in interstate commerce, as its business extends into other States. The State has control over its public streets and highways, and may authorize their use for the purposes of travel and commerce without the permission of the municipalities. The State does not surrender to municipalities entire control over its streets and highways. They are under legislative control. Cooley, Const. Lim. (6th Ed.) 725.

"They are for the use of the public in general, for passage and traffic, without distinction. The restrictions upon their use are only such as are calculated to secure to the general public the largest practical benefit from the enjoyment of the easement. When the highway is not restricted in its dedication to some particular mode of use, it is open to all suitable methods." *People* v. *Eaton,* 100 Mich. 208 (24 L. R. A. 721), and authorities there cited.

"No city or village has the power, by ordinance or by-law, to make the general laws of the State inoperative." *People* v. *Kirsch*, 67 Mich. 539.

Where a water company is authorized by its charter to lay pipes and distribute water, it has a right of access to the streets for that purpose, to be exercised in harmony with the public convenience. The city may regulate its exercise so as to prevent injury to other interests, but cannot interfere with the reasonable exercise of such right. *City of Grand Rapids* v. *Hydraulic Co.*, 66 Mich. 606; *Atlantic City Waterworks Co.* v. *Consumers' Water Co.*, 44 N. J. Eq. 427.

*Held*, that an electric telegraph "is indispensable as a means of intercommunication, but especially is it so in commercial transactions. * * * Goods are sold and money paid upon telegraphic orders; contracts are made by telegraphic correspondence, cargoes secured, and the movement of ships directed." *Pensacola Tel. Co.* v. *Western Union Tel. Co.*, 96 U. S. 1. The same statement now applies to the use of the telephone. It is as indispensable to commerce as is the telegraph.

Telephone companies are subject to the same rules as common carriers. *Delaware & A. Telegraph & Telephone Co.* v. *Delaware*, 2 C. C. A. 1, 50 Fed. 677. The same rule is held in *Leloup* v. *Port of Mobile*, 127 U. S. 640, holding that telegraphic communications are commerce, and that the State cannot impose a tax upon the occupation or business, or exact a license. The same rules apply to telephone companies. *Southern Bell Telephone & Telegraph Co.* v. *City of Richmond*, 78 Fed. 858.

Where the statute provided that telephone companies organized under its provisions "for the purpose of constructing and maintaining telephone or magnetic telegraph lines are authorized to set their poles, piers, abutments, wires, and other fixtures along and across any of the public roads, streets, and waters of this State, in such manner as not to incommode the public in the use of such

roads, streets, and waters " (1 Rev. Stat. Mo. 1879, § 879), *held*, that the municipal authorities could regulate by ordinance the location, kind of posts, piers, and abutments, and height of wires, but that no other restrictions could be imposed than those provided by the law. *State* v. *Flad*, 23 Mo. App. 185.

It will be observed that the act under which complainant is organized does not require the consent of the municipality to the construction of its lines. The reason of this is apparent. The business carried on by these corporations is not local, but extends over and outside the State. Where the business is purely local, the legislature, in authorizing the formation of these corporations, usually provides that it must be with the consent of the municipality. Such is the requirement in the case of train railways. 1 How. Stat. § 3527. So of street railways. Id. § 3548. So of water companies. Id. § 3115. So of electric-light companies. Id. § 4191.

Evidently it was not the intention of the legislature to permit municipalities to prevent telegraph and telephone companies from extending their business along the public highways and streets of the State. This rule seems practically to be conceded by the learned counsel for the defendant, for they say that the complainant's rights, if it has any, are subject to the valid exercise of the police power of the city. Complainant concedes this to be the law. The learned circuit judge who tried the case also conceded it, but said that the city "was not confined merely to the exercise of its ordinary police powers." Evidently the city desired to impose other conditions, and in furtherance of this desire its council arbitrarily refused to permit complainant to erect its poles and stretch its wires. Such refusal was not based on the inconvenience of the public or the obstruction of its streets. Under this statute the sole authority of the municipality is the proper exercise of the police power, inherent in it, to protect the public from unnecessary obstructions, inconveniences, and dangers, and to determine where and in what manner

complainant may erect its poles and stretch its wires so as to accomplish this result. It has no authority to impose other conditions. That authority rests in the legislature, —the charter-making power.

It is, however, insisted that Act. No. 215, Pub. Acts 1895, under which the defendant was incorporated, repeals the telephone act, in so far as it may be held to authorize the use of highways and streets for the erection of poles without the consent of the municipality. Section 14, chap. 22, of that act, provides, "They [the council] shall have authority * * * to regulate or prohibit the display, use, or placing of signs, advertisements, and banners, awning posts, and telegraph, telephone, or light poles and wires in or over the streets." The title of this chapter is, "Streets and Public Grounds," and the above language is found near the middle of the section, which specifies various subjects upon which the council may legislate. Repeals by implication are not favored. To this proposition it is unnecessary to cite authorities. The intent to repeal must very clearly appear, and courts will not hold to a repeal if they can find reasonable ground to hold the contrary. *Merrill* v. *President, etc., of Village of Kalamazoo,* 35 Mich. 211; *Connors* v. *Iron Co.,* 54 Mich. 168. This case forcibly illustrates the danger in holding general laws repealed by implication in granting charters to municipal corporations. Did the legislature intend by the above law for the organization of cities to confer upon those municipalities the power to annul the law in regard to telegraph and telephone companies, and to entirely prohibit the use of the telegraph and the telephone, which have become essential in commercial transactions? Clearly such an intention should not be attributed to the legislature unless the language of the law leads to no other conclusion. We see no difficulty in giving effect to both laws by holding that the later act confers this authority upon municipalities, subject to the general laws of the State in regard to the use of its streets and highways for telegraph and telephone purposes. These municipalities may, under this law, pro-

hibit the erection of these poles in places and in a manner which will injure or incommode the public.   This was the view taken by the supreme court of Wisconsin under a similar provision.   *Wisconsin Tel. Co.* v. *City of Oshkosh*, 62 Wis. 32, 40.

The decree of the court below will be reversed, and decree entered in this court in accordance with this opinion, directing the common council of the defendant to provide, by ordinance or otherwise, reasonable regulations for the erection of the poles and stretching the wires of the complainant.   Complainant will recover the costs of both courts.

The other Justices concurred.