STATE EX REL. ROCKY MOUNTAIN BELL TELE-
PHONE COMPANY, RELATOR AND APPELLANT, *v.*
MAYOR, ETC. OF THE CITY OF RED
LODGE ET AL., RESPONDENTS.

(No. 1,838.)

(Submitted March 25, 1904.   Decided May 9, 1904.)

*Telephones—Right to Use Streets—Power of Municipal Cor-*
*poration—Mandamus.*

1.  Civil Code, Section 1000, authorizes telephone corporations to construct
    their lones along and upon the streets of cities, since the term "public
    roads" includes "streets" of cities.
2.  Civil Code, Section 1000, applies as well to foreign corporations which have
    complied with the statute prescribing the conditions on which foreign cor-
    porations may do business in the state, as to domestic corporations.
3.  Civil Code, Section 1000, being a general law passed in pursuance of Con-
    stitution, Art. XV, Sec. 14, is not modified or limited by the laws relating
    to the government of cities.
4.  Civil Code, Section 1000, is not in conflict with, nor amended by, subse-
    quent enactments granting the power to cities to regulate and prevent the
    use or obstruction of city streets, sidewalks and public grounds.
5.  Under Civil Code, Section 1000, municipalities can only reasonably regulate
    the construction of telephone lines within their limits, they cannot en-
    tirely prohibit such construction as is named in the statute, hence, where
    a city council refuses to designate the location of poles for a telephone line,
    and requires the wires to be laid in conduits four feet under the streets,
    the proper remedy is by *mandamus* to compel the council to designate the
    location of the poles.
6.  That a city is charged with the duty of keeping its streets in repair, and
    that the cost of maintaining them is raised by public taxation within the
    city, does not give it jurisdiction over them exclusive of that of the legis-
    lative assembly.

*Appeal from District Court, Carbon County; Frank Henry,*
*Judge.*

*Mandamus* by the state, on the relation of the Rocky Moun-
tain Bell Telephone Company, against the mayor and city
council of the city of Red Lodge and the city of Red Lodge.
From a judgment denying the writ, and from an order denying
a new trial, relator appeals.   Reversed.

*Messrs. H. G. & S. H. McIntire,* for Appellant.

*Mr. G. W. Pierson,* and *Mr. O. F. Goddard,* for Respondents.

MR. COMMISSIONER POORMAN prepared the following opinion for the court:

The relator and appellant is a foreign corporation engaged in constructing, maintaining and operating telephone lines in the state of Montana, and through said state into other states. Desiring to construct a line into and through the city of Red Lodge, in Montana, to do business in said city, and to connect with its line in the state of Wyoming, the relator served upon the mayor and city council of the city of Red Lodge a demand that they designate the places for the erection of the necessary poles and fixtures for the proper construction of the company's lines in, upon and along the streets and alleys of said city. The city council treated this as an application of the relator for a permit to pass through the corporate limits of the city, and refused such permit, for the reason that the same would be in violation of city ordinance No. 97. The council designated a route through the city, however, whereon the company might construct its line in accordance with the provisions of such ordinance. This ordinance prohibits the erection or planting of poles or the stringing or maintaining of wires on or above the streets and alleys within the corporate limits of the city, and provides that such line may be constructed under the streets and alleys, in conduits, on condition that these conduits are at least four feet from the surface grade of the street or alley. This ordinance also provides penalties of fine and imprisonment for violation of its terms. The relator then applied to the district court for a writ of *mandamus* to compel the city to designate the places along the streets for the erection of its poles and the construction of its lines. An alternative writ was issued, and an answer made thereto. A hearing was had, and the court, after consideration, denied the writ. The relator made application for a new trial, which was also denied. From this judgment denying the writ, and from the order overruling the motion for a new trial, relator appeals.

1.   Section 14, Article XV, of the State Constitution, reads in part: "Any association or corporation   *   *   *   organized for the purpose, or any individual, shall have the right to construct or maintain lines of telegraph or telephone within this state, and connect the same with other lines; and the legislative assembly shall, by general law of uniform operation, provide reasonable regulations to give full effect to this section."

This constitutional provision is not self-executing, but lay dormant until given vitality by legislative enactment. In pursuance of the authority therein given, and in obedience to the constitutional command to enact a "general law of uniform operation," the legislative assembly enacted Section 1000 of the Civil Code, which reads: "A telegraph or telephone corporation, or a person, is hereby authorized to construct such telegraph or telephone line or lines from point to point, along and upon any of the public roads, by the erection of necessary fixtures, including posts, piers and abutments, necessary for the wires; but the same shall not incommode the public in the use of said roads or highways." This section has not heretofore, to our knowledge, been the subject of construction by this court, but similar statutes have been so often construed by other courts, both state and federal, that its construction cannot now be regarded as *res integra.*

Are streets within the the meaning of the term "public roads?" The language of the statute with reference to the privilege granted is plain and emphatic. It is a direct grant of authority by the legislature to use the public roads for the construction and maintenance of telephone and telegraph lines, subject only to the condition that the public shall not be incommoded "in the use of said roads and highways." Section 2600 of the Political Code reads in part: "All highways, roads, streets, alleys, courts, places and bridges   *   *   *   are public highways." This same language is used in an Act of the Eighth legislative assembly (Laws 1903, p. 66, Chapter 44), amendatory of Chapter II, Article I, Title VI, Part III, of the Political Code, concerning highways and roads. Telegraph and

telephone companies stand upon equal footing under this law. Both are used as means of intercommunication and for commercial purposes. To secure this business, as well as to accommodate the public, their terminals and stations are located in the larger business centers. That was the condition existing when the law was passed. It is not reasonable to conclude that the legislature authorized these companies to transact their business within the state, but left them without authority to enter the centers of population and commerce—places that are necessary to go to in order to do the very business authorized to be done. If the statute applied only to rural ways, the grant would be of little benefit to the public or to the owners of the lines. The very scope and purpose of the Act would be defeated. (*Chamberlain* v. *Iowa Tel. Co.,* 119 Iowa, 619, 93 N. W. 596.)

"It is contended    *    *    *    that the terms 'public roads and highways,' used in this statute, apply only to rural public roads and highways, and were not intended to include streets    *    *    * which are always placed under the control of the municipalities. It is enough to say that the control over streets    *    * is but delegated power, and in no way detracts from the power of the legislature to exercise such control itself by direct enactment.    *    *    *    'Public road' and 'highway' are usually understood to mean the same thing.    *    *    *    Telegraphs connect cities and villages, and have their stations in such places throughout the country and the civilized world. It is quite as necessary to their construction and operation that they have the right to be and continue upon these highways of cities and villages as upon rural highways.    *    *    *    The words of the statute under consideration include all urban as well as rural highways." (*Abbott* v. *City of Duluth* (C. C.), 104 Fed. 833; Keasby on Elec. Wires (2d Ed.), pars. 6-34.)

Wisconsin, Iowa, Minnesota, Ohio and other states have statutes similar to Section 1000. The courts of these states have construed these laws as a direct grant from the state of the right to use the public roads and highways for the construction

of telephone and telegraph lines, and hold that public roads and highways include streets of cities. (*State ex rel. Tel. Co.* v. *City of Sheboygan*, 111 Wis. 23, 86 N. W. 657; *Chamberlain* v. *Iowa Tel. Co., supra; City of Zanesville* v. *Tel. Co.*, 64 Ohio St. 67, 59 N. E. 781, 52 L. R. A. 150, 83 Am. St. Rep. 725; *Northwestern Tel. Exch.* v. *Minneapolis*, 81 Minn. 140, 83 N. W. 527, 86 N. W. 69, 53 L. R. A. 175; *Abbott* v. *City of Duluth* (C. C.), 104 Fed. 833. See, also, *City of Toledo* v. *Tel. Co.*, 107 Fed. 10, 46 C. C. A. 111, 52 L. R. A. 730; *Michigan Tel. Co.* v. *City of Benton Harbor*, 121 Mich. 512, 80 N. W. 386, 47 L. R. A. 104; *Township of Summit* v. *Tel. Co.*, 57 N. J. Eq. 123, 41 Atl. 146; *State ex rel. Tel. Co.* v. *Flad*, 23 Mo. App. 185; *Hodges* v. *Tel. Co.*, 72 Miss. 910, 18 South. 84, 29 L. R. A. 770; *People* v. *Trustees* (Sup.), 72 N. Y. Supp. 350; *New York & N. J. Tel. Co.* v. *Mayor, etc. of Bound Brook*, 66 N. J. Law, 168, 48 Atl. 1022.)

2. Does this section apply to foreign corporations? It is alleged in the petition and admitted in the answer that relator is a foreign corporation; that it has complied with the laws of Montana prescribing the conditions upon whch such corporations may do business in this state. The statute Section 1030 *et seq.*, Civil Code, and the amendatory Act of 1901, p. 150, having been complied with, the relator had the right to do business in this state. Section 1000, *supra*, does not attempt to discriminate between domestic and foreign corporations, but is a general law, applicable to all corporations and individuals transacting business of the kind therein named. The decision in *State ex rel. Aachen Ins. Co.* v. *Rotwitt*, 17 Mont. 41, 41 Pac. 1004, traces the history of the statute prescribing the conditions upon which foreign corporations may do business in this state. See, also, *Mutual Benefit Life Ins. Co.* v. *Winne*, 20 Mont. 20, 49 Pac. 446.

3. Is Section 1000 modified or limited by laws relating to the government of cities? No municipality, either county or city, possesses any legislative authority except that directly delegated by the state legislature, save the power which arises

from necessary implication. (Cooley's Const. Lim. (6th Ed.) 227.) The legislature, within constitutional limits, is supreme. It alone may grant or delegate power to grant privileges to corporations or individuals, and to establish general policies of the state. The charters of all municipal corporations are the general laws of the state. The Constitution in many instances indicates the general character of legislation. The section of the Constitution above quoted not only declares the right and policy of constructing and maintaining telegraph and telephone lines, but commands the legislature to give vitality to that right and policy "by a general law of uniform operation." A law which excepts a part of a given class is not general and uniform, and the legislature has not attempted to make of streets a separate class of highways. If the subordinate divisions of the state are vested with the authority either of preventing the construction of these lines, or of imposing resrictions which will have that effect, then the legislature has not complied with this constitutional command. It is true that Section 12, Article XV, of the Constitution, provides that no railroad shall be constructed within a city without the consent of the local authorities, but no such provision exists with reference to telegraph and telephone lines, and in view of the provisions of Section 14 of this Article, above quoted, this fact becomes significant.

4. It is claimed by respondent that subsequent enactments, or enactments declared to be subsequent, by Section 5181 of the Political Code, are in conflict with and amend the section under consideration. This section of the Civil Code is a general law, enacted in obedience to a command of the Constitution, and to provide means of enjoying a privilege originating with that instrument. The part claimed to be in conflict is the power granted to the cities to regulate and prevent the use or obstruction of streets, sidewalks and public grounds by signs, telephone poles, posting of handbills and advertisements. The provisions of the Act of March 7, 1893 (Laws 1893, p. 113; Section 4800, Political Code), and of the Act of March 8, 1897 (Laws 1897, p. 203), relative to the powers of cities, are practically the same,

so far as the questions involved in this case are concerned, and it is therefore unnecessary to determine which of these laws is now in force. There is not necessarily any conflict between these laws and said Section 1000. The one granting powers to cities must be construed subject to the provisions of the general law. (Section 4703, Political Code.) The state does not surrender to municipalities entire control over its streets and highways. They are under legislative control. "Municipal bylaws must also be in harmony with the general laws of the state, and with the provisions of the municipal charter. Whenever they come in conflict with either, the by-law, must give way." (Cooley on Const. Lim. (7th Ed.) 278.) "Public highways are under legislative control. They are for the use of the public in general, for passage and traffic, without distinction. The restrictions upon their use are only such as are calculated to secure to the general public the largest practicable benefit from the enjoyment of the easement. When the highway is not restricted in its dedication to some particular mode of use, it is open to all suitable methods." (*People* v. *Eaton,* 100 Mich. 208, 59 N. W. 145, 24 L. R. A. 721.) "The power conferred upon incorporated towns by the general incorporation Act is but a mere grant of limited power to the municipality, which it holds subject to the general laws of the state." (*In re O'Brien,* 29 Mont. 530, 75 Pac. 196.) "But municipal corporations are subordinate parts of the state, and invested with limited powers. The legislature, in granting such powers, does not divest itself of any power over the inhabitants of the district which it possessed before the charter was granted." (*Wilcox* v. *Deer Lodge County,* 2 Mont. 574.) "No city or village has the power by ordinance or by-laws to make the general laws of the state inoperative." (*People* v. *Kirsch,* 67 Mich. 539, 35 N. W. 157.) See, also, Section 4703, Political Code of Montana, which prescribes a limitation upon the powers of cities.

In *Wisconsin Tel. Co.* v. *City of Oshkosh,* 62 Wis. 32, 21 N. W. 828, the court, after deciding that the state had by general law granted the right to the telephone company to construct its

lines along the streets of cities, held that the power subsequently granted to cities "to regulate, control and prohibit the location, laying, use and management of telegraph, telephone and electric light and power wires and poles" was not in conflict with the general law, but must be construed as subordinate thereto. The same conclusion was reached under similar provisions in *Michigan Tel. Co.* v. *City of Benton Harbor,* 121 Mich. 512, 80 N. W. 386, 47 L. R. A. 104.

There is nothing in the Act delegating powers to cities from which it can be inferred that it was the intention of the legislature that the powers there delegated should operate as a repeal of the general laws of the state, and repeals by implication are not favored.

In *Michigan Tel. Co.* v. *City of Benton Harbor,* above cited, the court says: "This case forcibly illustrates the danger in holding general laws repealed by implication in granting charters to municipal corporations. Did the legislature intend by the above law for the organization of cities to confer upon those municipalities the power to annul the law in regard to telegraph and telephone companies, and to entirely prohibit the use of the telegraph and the telephone, which have become essential in commercial transactions? Clearly, such an intention should not be attributed to the legislature unless the language of the law leads to no other conclusion. We see no difficulty in giving effect to both laws by holding that the latter Act confers this authority upon municipalities, subject to the general laws of the state in regard to the use of its streets and highways for telegraph and telephone purposes."

5. Is *mandamus* the proper remedy? The statute delegates to cities the authority, and makes it their duty, to regulate the use of streets in such manner as not to incommode public travel, and to regulate the placing of improvements thereon in such manner as to protect the public from inconvenience and danger. Section 1000, *supra,* not only grants the right and privilege of constructing telephone lines, but also defines the manner of their construction "by the erection of necessary fixtures, in-

cluding posts, piers and abutments necessary for the wires."
The use of the term "posts, piers and abutments" presupposes
what is known as the "overhead system." The manner of con-
structing these lines is as much a part of this section as is the
right of construction given. The city council has a twofold
duty to perform: (1) To permit the corporation to enter the
city; and (2) to designate the location of poles, abutments, etc.
It does not possess the power to prohibit the one any more than
it does to refuse the other. The municipality may, in the exer-
cise of its power, prohibit the erection of these poles in places
or in a manner which will incommode the public; but they can-
not entirely prohibit. They can only regulate, and the regula-
tion must be reasonable. In a sense the city is called upon to
grant a privilege. Whether this privilege amounts to a fran-
chise is not here decided. If it is a franchise, it is one which
the council cannot refuse to grant under this law. It may,
within the bounds of reason, determine the character and height
of the poles, but it cannot totally ignore the system of construc-
tion named in the statute, and substitute one totally foreign
thereto. (*Michigan Tel. Co.* v. *City of Benton Harbor,* above
cited.)

The demand made by the relator upon the council to designate
the location where it might erect its poles was answered by the
council by reference to an ordinance which forbade the erection
of any poles at all, and provided that the wires must be buried
at least four feet under ground. This was not a reasonable
exercise of discretion within the meaning of this law, and was,
therefore, equivalent to an absolute refusal. The council, being
charged with this duty, and having failed to perform it, may
be compelled by *mandamus* to act. Nor does this in any man-
ner interfere with the discretionary power possessed by the
council. It only coerces it into action, leaving it free to exer-
cise its own judgment, circumscribed only by this general law,
and by what is reasonable. It is claimed that the city is charged
with the duty of keeping its streets in repair, and is liable for
damage resulting from a failure to perform this duty; that the

city ought, therefore, to be permitted to exercise exclusive juris-
diction, inasmuch as the cost of maintaining the streets is raised
by public taxation within the municipality.    Nearly all the
public roads of the state—perhaps all—are supported by tax-
ation within the several subordinate divisions of the state, and
this same argument would apply equally to counties.    But both
cities and counties are subordinate to the general laws of the
state in all matters.

*Mutual Electric Light Co.* v. *Ashworth,* 118 Cal. 1, 50 Pac.
10, is cited by respondents in maintenance of the proposition
that *mandamus* is not the proper remedy in this case.    The
only question decided in that case was: "Where a valid city
ordinance requires a special permit of the supervisors before
poles can be erected in the streets, and such permit is issued
to one electric company and denied to another, the remedy of
the latter is not an injunction restraining the superintendent
of streets from interefering with its erection of poles in viola-
tion of the ordinance." The court further says: "The remedy
would seem to be in compelling the granting of a permit in a
proper case.    *  *  *    The wrong consists in refusing it to the
plaintiff when it ought to be granted, and under such circum-
stances as it is freely granted to the favored corporation." The
only inference to be drawn from this decision is that *mandamus,*
in the judgment of the court, was the proper remedy to compel
the granting of the required permit.

We recommend that the judgment and order appealed from
be reversed, and that the cause be remanded to the district court,
with instructions to grant the writ prayed for.

PER CURIAM.—For the reasons stated in the foregoing opin-
ion, the judgment and order are reversed, and the cause is
remanded to the district court, with instructions to grant the
writ prayed for.

MR. JUSTICE MILBURN, not having heard the argument, takes
no part in this decision.