MAHAN *v.* MICHIGAN TELEPHONE CO.

1. TELEPHONE COMPANIES — MUNICIPAL CORPORATIONS — ORDINANCES.

Although a telephone company has a right to maintain a telephone exchange in a city under reasonable rules and regulations made by the city, yet it may, by accepting an ordinance, enter into contractual relations with the city, and be bound to perform the terms and conditions of the ordinance.

2. SAME—ASSIGNEE—RATES.

Where a telephone company accepts a franchise containing a provision that its terms and conditions shall be binding upon any assignee, and that the assignee shall operate its lines under the ordinance, a competing telephone company which purchases all its tangible property, including the rights under the franchise, will be bound to furnish service to subscribers of the selling company at the rates fixed by the ordinance.

3. SAME—MANDAMUS.

*Mandamus* is a proper remedy to compel a telephone company to furnish a subscriber connections through its exchange.

*Certiorari* to Wayne; Brooke, Frazer, Carpenter, Hosmer, and Rohnert, JJ. Submitted June 17, 1902. (Docket No. 41.) Decided February 17, 1903.

*Mandamus* by John Mahan to compel the Michigan Telephone Company and the Detroit Telephone Company to furnish service to relator. From an order granting the writ, respondents bring *certiorari*. Affirmed.

*James H. Pound*, for relator.

*W. E. Thompson* (*Wells, Angell, Boynton & Mc-Millan* and *D. F. Morgan*, of counsel), for respondents.

MONTGOMERY, J.   The opinion of the circuit judges, prepared by Judge Brooke, states the issue and discusses the points involved in this case so clearly that we quote it at length:

"This is a petition by the relator against the respondent the Michigan Telephone Company for a writ of *mandamus* to compel said respondent to give petitioner access to the subscribers to the telephone system owned and operated by the Michigan Telephone Company in the city of Detroit. The facts of the case may be briefly stated as follows: For some years prior to the 14th day of March, 1896, the respondent the Michigan Telephone Company had owned and operated in the city of Detroit a telephone exchange. Upon the said 14th day of March, 1896, the respondent the Detroit Telephone Company secured a franchise from the city of Detroit, and said franchise was on said date accepted by said respondent the Detroit Telephone Company.   Under said franchise the respondent the Detroit Telephone Company proceeded to install a telephone exchange in the city of Detroit, and secured, from time to time, subscribers, so that, at the time the contract was entered into with the relator by the respondent the Detroit Telephone Company, there were upwards of 5,000 subscribers to said system.   The petitioner, Mahan, had a contract with the respondent the Detroit Telephone Company, running for a period of five years, and bearing date the 25th day of August, 1899, which had not expired, by about two years, at the time the acts complained of were committed by the respondents.

"On the 6th of April, 1900, the respondent the Detroit Telephone Company executed a bill of sale whereby, for a valuable consideration, it transferred to the respondent the Michigan Telephone Company all of its tangible property, including some 5,200 telephones, and also including all rights under said franchise from the city of Detroit of March 14, 1896.   Soon thereafter the purchasing company, the Michigan Telephone Company, caused the two exchanges to be connected; and from that time up to the 1st day of December, 1901, subscribers to either system

were given access, not alone to the system to which they subscribed, but to all subscribers of the other system. On or about the 1st day of December, 1901, the Michigan Telephone Company notified all subscribers to the Detroit Telephone Exchange that after that date connection with the Michigan Company's subscribers could not be had, and since that time the Michigan Company has refused to furnish to the Detroit Telephone subscribers connection with the Michigan Company's subscribers. Demand has been made by the relator upon the Michigan Company for such connection, and has been refused. During the period between April 6, 1900, when the number of telephones in use by the Detroit Telephone Company was over 5,000, and the 1st day of December, 1901, when the number in use by the patrons of that company was reduced to something like 300, agents of the Michigan Telephone Company endeavored to induce users of the Detroit Telephone to discontinue the same and use only the Michigan Telephone. At the time the petition was filed in this case the Detroit Telephone users had become further diminished to about 90, and, at the time the argument was heard, it had been further reduced, as was asserted by counsel for petitioner, which statement was unchallenged by counsel for either respondent, to about 21.

"Two questions are raised by the pleadings in this case which have already been determined, viz.: (1) The propriety of the remedy; and (2) the reasonableness of the rate charged by the respondent the Michigan Company. As to the first question, this court has already determined that *mandamus* is a proper remedy, and, as to the second, it has determined that the rates charged by the Michigan Company are not fairly in issue in this proceeding. The sole question, therefore, remaining for determination, is whether or not the petitioner is entitled, under the pleadings and proofs, to the writ of *mandamus* to compel the respondent the Michigan Company to give him, a subscriber to the Detroit Telephone Exchange, access to the subscribers of the Michigan Telephone Company in the city of Detroit.

"Section 14 of the ordinance of March 14, 1896, running to the Detroit Telephone Company, is as follows:

" 'If the said company shall, at any time during the term of this franchise, transfer its rights to any other telephone company now operating in Detroit, or make any consolidation with such company, the company acquiring such rights, or the consolidated company,

shall be subject to the terms and conditions of this ordinance, and shall operate its lines under this ordinance.'

" Section 15 of said ordinance is as follows: 

" 'All the rights, liabilities, and obligations herein granted or imposed upon said company shall apply to and be operative in favor of or against any assignee or successor of said company.'

" The above-named respondents, the Michigan Telephone Company and the Detroit Telephone Company, are organized under the provisions of chapter 177 of the Compiled Laws, section 4 of which act provides the manner in which telephone companies may operate within the State of Michigan.    Counsel for respondents claim that sections 14 and 15 of the ordinance were never binding upon the respondent the Detroit Telephone Company, and cite in support of their contention *Michigan Telephone Co.* v. *City of St. Joseph*, 121 Mich. 502 (80 N. W. 383, 47 L. R. A. 87, 80 Am. St. Rep. 520).    In that case the complainant's assignor, the Telephone & Telegraph Construction Company, presented a petition to the common council of the village of St. Joseph for permission to construct, maintain, and operate a telephone system in said village. The permission was duly granted by the village, and the company proceeded, at large expense, to erect poles and stretch wires within the lines of the streets and alleys in said village until June 5, 1891, when the village became incorporated as a city.    The complainant in that case, being the respondent the Michigan Telephone Company in this case, duly acquired by purchase all the property, rights, and privileges of said construction company, and continued to do business in said city until August 3, 1897, when it erected, in a good and workmanlike manner, and in accordance with the terms of the statute under which it was organized, certain poles in said city, for the purpose of connecting with its central office the premises of persons who had subscribed for telephone service.    On said August 3, 1897, the common council passed a resolution declaring said poles and wires a nuisance, and instructed the street commissioner to forthwith remove them, which he did.    On August 10 and 16, 1897, the complainant presented two petitions to the common council, asking permission to erect poles in certain specified streets and alleys. The council refused permission.    Under these facts, in an opinion by Justice Grant, it was held that it was the clear duty of the defendant to act upon the petitions presented to its common council by the complainant, and to

establish reasonable rules and regulations for the erection of poles and the stretching of wires.

"The other case cited by respondents' counsel is the case of *Michigan Telephone Co.* v. *City of Benton Harbor*, 121 Mich. 512 (80 N. W. 386, 47 L. R. A. 104), and it only differs from the case last cited in that the assignor of the complainant never had permission granted to it to erect its poles or string its wires in the city; and in that case it was held, as in the case last cited, that the common council of the defendant city should provide, by ordinance or otherwise, reasonable regulations for the erection of the poles and stretching of the wires of the complainant.

"In the case first cited (*Michigan Telephone Co.* v. *City of St. Joseph*) the following language occurs in the opinion by Justice GRANT:

" 'It is urged that the permission granted to the Telephone & Telegraph Construction Company was personal to that company, and could not be alienated without the consent of the city. That company was organized under a general law of the State, and derived its powers and obligations from that law. The only power which a city could have exercised over it was that of regulation.'

"Under the principles laid down in the decisions just cited, it is quite apparent that had the Detroit Telephone Company applied to the common council of the city of Detroit to fix, by ordinance or otherwise, reasonable rules and regulations under which it might proceed, by virtue of the power granted in the act under which it was organized, to erect its poles, string its wires, and establish a telephone exchange in the city of Detroit, the court would have compelled compliance with the demand. That, it seems to us, is all that the cases in question determine. But can it be said that, because the Detroit Telephone Company had the right to insist upon the city of Detroit making reasonable rules and regulations under which it should establish and operate its telephone exchange in the city of Detroit, it was thereby precluded from entering into contractual relations with the city of Detroit touching the terms and conditions under which it should erect and operate its said exchange? It seems to us obvious that this cannot be so. The right of the city to make the contract in the premises cannot be questioned. Neither can it be questioned that the Detroit Telephone Company had the right, as well as the power, to make a contract with reference to the erection, maintenance, and operation of its

exchange.   An examination of the ordinance in question discloses the fact that in section 1 of said ordinance the right is given by the city to the respondent the Detroit Construction Company to lease, to any other company having similar rights to itself, the right to use poles and conduits of the respondent the Detroit Construction Company.   This is clearly a concession, and presumably a valuable one, to the grantee in the franchise, and is clearly outside any rights which it could claim under the authority of the general law which it now invokes.

"Upon the day of the passage of said ordinance, the respondent the Detroit Construction Company accepted said ordinance in the following terms:

" 'DETROIT, March 19, 1896.

" 'TO THE MAYOR AND COMMON COUNCIL:

" 'The Detroit Telephone Construction Company accepts the ordinance granted to said company, approved March 14, 1896.

" 'The DETROIT TELEPHONE CONSTRUCTION COMPANY,

" 'By CHARLES FLOWERS, Vice-President.

" 'By order of the board of directors.'

"The passage of said ordinance by the common council, its approval by the mayor of the city of Detroit, and its acceptance by the company, constitute, in our opinion, a binding contract between the company or its assigns and the city of Detroit.   The company acted under the ordinance, and installed its exchange thereunder, and the citizens of the city of Detroit, to a large number, became subscribers thereto; and we do not understand it is claimed that the respondent the Detroit Telephone Company could have at any time itself repudiated any of the terms of the ordinance under which it did business for several years.

"The sole question remaining for determination, therefore, is, Did the respondent the Michigan Telephone Company, by its act in acquiring by the bill of sale all the tangible property of the Detroit Telephone Company, as well as all its rights under the franchise in question, coupled with its action thereafter, become fixed with the duties and obligations with which the Detroit Telephone Company was charged under said franchise?   We think it did.   The respondent the Michigan Telephone Company must be held to have entered into the purchase with full knowledge and notice of the franchise in question, and all the conditions and obligations assumed by its grantor

thereunder, and it cannot now enjoy the benefits thereof without also assuming the obligations incident thereto. Strength is added to this view by the action of the respondent the Michigan Telephone Company immediately after said purchase, as tending to show what construction it itself placed upon said franchise and the obligations incident thereto. Immediately after the purchase by it of the tangible assets of the Detroit Company and its franchise rights, access was given by it to the subscribers of the Detroit Telephone Exchange to the subscribers to the Michigan Exchange. Users of the Detroit Telephone Company accepted this service and paid for the same for a period of something like a year and a half. We are of the opinion that the furnishing of the service by the respondent the Michigan Company, and the acceptance thereof by the subscribers to the Detroit Company, if it did not constitute a new implied contract between the Michigan Company and said subscribers, at least furnishes a construction of the terms of the ordinance by the parties themselves which the respondent the Michigan Telephone Company is not now at liberty to repudiate."

We are satisfied with the reasoning of the foregoing opinion, and adopt it.

It is contended in this court that *mandamus* is not a proper remedy, but we agree with the learned circuit judges that that remedy is open. Merrill, Mandamus, § 162.

The order will be affirmed.

HOOKER, C. J., MOORE and GRANT, JJ., concurred.