CITY OF OWOSSO v. UNION TELEPHONE COMPANY.

1. TELEGRAPHS AND TELEPHONES — CARRIERS — MICHIGAN RAILROAD COMMISSION — STATUTES—RATES—REGULATION—MUNICIPAL CORPORATIONS—CITIES.

Under Act No. 206, Pub. Acts 1913, declaring that telephone companies and telephone lines are common carriers and subjecting them to the control of the Michigan railroad commission, the regulation and supervision of such corporations is committed to the exclusive charge of the commission, and the act limits in a large degree the resort to the courts in the first instance and affects the statutory and common-law remedies, reserving to the courts the right of final review by appeal from orders of the commission.

Per BROOKE, C. J., and STONE, MOORE, and STEERE, JJ.

2. SAME—CONTRACTS—CONSTITUTIONAL LAW—FRANCHISES.

In the absence of clear and express delegated power from the State, contracts in the nature of a franchise from a city to a telephone or power company, fixing the rates

and placing restrictions upon the business, are permissive only and not such agreements as are contemplated by constitutional limitations.

Per BROOKE, C. J., and STONE, MOORE, and STEERE, JJ.

3. SAME.

In 1898, when defendant's franchise was enacted by complainant in the form of an ordinance, the defendant was authorized to use the public streets, etc., in the conduct of its business, without permission from the municipality (2 Comp. Laws, § 6691, 3 How. Stat. [2d Ed.] § 7214), and the authority of the city under the statutes of this State was limited to the police power in enforcing reasonable rules and regulations as to the erection of poles and equipment and in preserving the* streets in safe condition for public travel and other uses.

Per BROOKE, C. J., and STONE, MOORE, and STEERE, JJ.

4. SAME—PLEADING—EQUITY—DEMURRER.

On demurrer to complainant's bill averring that defendant telephone corporation had accepted and was operating under an ordinance or franchise authorizing it to construct and maintain a telephone system and lines in the city of Owosso at rates specified in the ordinance, that defendant attempted to raise its rates by imposing upon delinquent subscribers an extra charge of 50 cents per quarter, by sending notice to patrons that after a date named the rates would be increased by the said amount, and a rebate to the old rates granted to those not in default, the bill of complaint, which contained no averment that any one had become delinquent or that any attempt had been made to enforce the advanced rate, did not state a case for equitable relief, and is dismissed on appeal because no threatened irreparable injury was disclosed and no damage or primary injury set forth.

Appeal from Shiawassee; Miner, J. Submitted November 23, 1914. (Docket No. 143.) Decided April 6, 1915.

Bill by the city of Owosso against the Union Telephone Company for an injunction and other relief. From an order overruling its demurrer defendant appeals. Reversed.

*Leon F. Miner,* for complainant.

*William A. Bahlke, Thomas G. Long,* and *Stevenson, Carpenter, Butzel & Backus* (*Edwin H. Lyon,* of counsel), for defendant.

STEERE, J.  This case comes here on appeal from an order overruling defendant's demurrer to complainant's bill filed in the circuit court for the county of Shiawassee to restrain defendant from charging its subscribers in the city of Owosso any sum for the rental of its telephones in excess of the rate fixed by an ordinance of said city.

In outline, said bill states:  That on the 21st of September, 1898, an ordinance was passed and accepted granting defendant's predecessor, the Owosso Telephone Company, assignor of defendant, a "franchise and ordinance" authorizing it to construct, operate, and maintain a telephone line in said city and to charge a telephone rental not exceeding $20 per year for business places and $18 per year for residences within the city limits for 5-year contracts; after five years, not to exceed $24 for business places and $18 for residences per year; also, providing there should be free service between the city of Owosso and Corunna, and a charge not exceeding $18 per year for any telephones furnished for the use of the city of Owosso.  That defendant operates under and by virtue of said franchise and ordinance and has obeyed its provisions until shortly before commencement of this suit, when it sent statements of account to various subscribers in the city of Owosso having residence telephones showing them to be indebted to the telephone company in the sum of $5 for the three months following October 1, 1913, until January 1, 1914, and to subscribers having telephones in business places showing that they were indebted to said company for rental of telephones for said period in

the sum of $6.50, appended to the statements being the following note: "Quarterly rental charge subject to rebate of 50 cents if paid by the 15th of first month of each current quarter" — claiming the right to charge 50 cents additional for three months' rental of a telephone, as a penalty, if said rental is not paid on or before the 15th day of each quarter. And that said company also insists that the city of Owosso pay, in like case, a penalty of 50 cents per quarter, the same as charged other subscribers; said bill of complaint therefore being filed by the city of Owosso in its own behalf, as a subscriber to said company, and also in favor of various residents of the city who are subscribers. That, though requested by the city attorney to refrain from the practice of charging such additional 50 cents in such cases, defendant refused, and is continuing so to do. Wherefore an injunction is asked restraining defendant therefrom.

On the filing of this bill a temporary injunction was allowed by the court restraining defendant from making such additional charges for delinquency in payment.

To this bill defendant filed a general demurrer assigning nine grounds therefor, in substance as follows:

(1) The bill is devoid of equity.

(2) Does not aver that the subject-matter exceeds $100.

(3) Complainant has a full, complete, and adequate remedy at law.

(4) The circuit court in chancery has no original jurisdiction to adjudicate upon the subject-matter of said bill.

(5) "That the whole subject-matter as set forth in such bill of complaint is exclusively within the jurisdiction of the railroad commission in and for the State of Michigan under and by virtue of Act No. 206 of the Session Laws of Michigan for the year 1913."

(6) That the city has no authority under its charter or the ordinance set forth in the bill to regulate and control defendant in charging or collecting 50 cents per quarter against delinquent subscribers there referred to.

(7) That defendant has a right under the law to collect said extra charge from delinquents as a reasonable regulation in the conduct of its business, and said rule does not in law violate the maximum rentals allowed by said ordinance.

(8) That section 7 of said ordinance is void, in that it unlawfully discriminates between other subscribers of defendant and said city and in attempting to regulate telephone rates beyond the jurisdiction of said city, and "that therefore there is no affirmative showing made by said bill that the complainant is paying, or has paid, the maximum rate allowed by said ordinance to be charged for said telephone service."

(9) "That the complainant city has no right, power, or authority under said ordinance, its charter, or the laws of this State, to file a bill of complaint in the interest of and for the benefit of subscribers of the Union Telephone Company."

Of these nine reasons, counsel for defendant confine their argument and refer in their briefs to Nos. 1, 6, 4, 5, 9, which overlap to a degree and are more or less contingent on each other. Aside from a denial of equity in the bill and failure from any viewpoint to state a case in the bill entitling complainant to equitable relief, defendant's chief contention is that the city had no power to regulate rates; and, in any event, the extra charge to delinquent subscribers, as complained of, is but a reasonable rule in the conduct of its business and a matter exclusively within the jurisdiction of the State railroad commission of the State of Michigan under said act of 1913 (Act No. 206), entitled:

"An act to declare telephone lines and telephone companies within the State of Michigan to be common carriers, to regulate the business of the same,

185 Mich.—23.

provide for the consolidation thereof and prescribe a penalty for the violation of this act."

Sections 2 and 3 of said act provide, in part, as follows:

"The Michigan railroad commission, hereinafter styled 'the commission,' shall have the general control of all telephones, telephone lines and telephone companies within the State, and shall investigate any alleged neglect or violation of the laws of the State by any person, copartnership or corporation doing a telephone business within the State, or by the officers, agents or employees thereof.    *    *    *

"All charges made for any service rendered, furnished or performed, or to be rendered, furnished or performed within the State by any telephone company shall be reasonable and just, and every unjust and unreasonable charge for such service is prohibited and declared to be unlawful; and the commission shall have power to make, alter, amend or abolish any rate or charge for any service, and may regulate by rules or orders any service or facility."

Under these and following provisions of said act it is contended that all original jurisdiction in questions involving alleged unjust and unreasonable charges is vested in the railroad commission, to whom aggrieved parties must first appeal, and therefore the court of chancery has no jurisdiction over the subject-matter of this bill except on appeal from rulings of the commission, for which full and detailed provision is made in the act.

On the part of complainant, it is contended that the act nowhere gives to the railroad commission exclusive jurisdiction and control over telephone companies; that in the instant case the franchise granted by the city, accepted and acted under by the telephone company, before said act was passed, is a valid and binding contract, establishing contractual relations and rights between the respective parties in regard to rates, binding upon both, and neither the legisla-

ture nor the court has, under the Constitution, any right to enact a law or make an order impairing the obligation of such a contract—citing the familiar provision of our Constitution that no "law impairing the obligation of contracts shall be passed," etc. It is further urged that the telephone company, having voluntarily entered into a contract with the city, has recognized its right to fix the maximum rate to be charged subscribers and is now foreclosed by the doctrine of estoppel from denying the same; therefore, admitting that defendant is, as a general proposition, authorized to enforce reasonable rules and regulations in the conduct of its business, it is urged that rules and regulations imposing a charge in violation of contract relations cannot be held reasonable.

It seems clear, unless in exceptional cases, that, under said Act No. 206, governmental supervision, control, and regulation of telephone companies doing a public business is committed to the Michigan railroad commission, and that as a rule said commission has authority to pass upon and determine all questions of rates. The broad power delegated by statute to that commission impliedly abrogates or limits in a large degree first instance resort to the court by both statutory and common-law remedies previously available, while the act carefully preserves the right of appeal to the courts for final review.

Complainant is a municipal, and defendant a public utility, corporation, each holden for its existence and entity to a franchise granted by the State—a right conferred upon an association of natural persons in the name and under protection of an artificial personality to organize and engage in certain activities. Their rights and powers are limited by the laws under which they are organized. With the question of contractual rights, raised by counsel for complainant, is involved the question of corporate power in the city

to enter into a contract with defendant, a public utility corporation, fixing its rates beyond State control. In the absence of clear and express delegated power from the State, it has been held that contracts of the nature claimed here are permissive only and not such as are contemplated by constitutional limitations. *Louisville, etc., R. Co.* v. *Mottley,* 219 U. S. 467 (31 Sup. Ct. 265, 34 L. R. A. [N. S.] 671).

At the time this ordinance was passed in 1898, defendant had the right to use public places, streets, and highways in the conduct of its business without any franchise granting permission (section 6691, 2 Comp. Laws; 3 How. Stat. [2d Ed.] § 7214), and the authority of the city under section 3186, 1 Comp. Laws (2 How. Stat. [2d Ed.] § 5708), was limited to the police power of imposing and enforcing reasonable rules and regulations controlling the erection and maintenance of poles, wires, etc., to preserve its streets reasonably safe and convenient for public travel and other proper use. *Michigan Telephone Co.* v. *City of Benton Harbor,* 121 Mich. 512 (80 N. W. 386, 47 L. R. A. 104) ; *Village of Jonesville* v. *Telephone Co.,* 155 Mich. 86 (118 N. W. 736, 130 Am. St. Rep. 562, 16 Am. & Eng. Ann. Cas. 439) ; *Union Telephone Co.* v. *Ingersoll,* 178 Mich. 187 (144 N. W. 560, 52 L. R. A. [N. S.] 713).

In this case, however, it appears that an ordinance was enacted by the city fixing rates, and accepted. If this ordinance granted to defendant any valuable right "clearly outside any rights which it could claim under the authority of the general law," when accepted it would be a contract binding on defendant, under the ruling in *Mahan* v. *Telephone Co.,* 132 Mich. 242 (93 N. W. 629).

Inasmuch as defendant demurred to complainant's bill, of which the ordinance in question is made a part, thus admitting all facts therein stated as true,

no testimony was taken, and we are relegated to the bill for information as to the situation. An examination of the ordinance shows that the only right or privilege granted defendant's assignor is "permission and authority to construct, operate and maintain lines of telephone and electric wires with the necessary posts, poles, equipments and appurtenances, and to make business, house and building connections, and from time to time repair, replace, enlarge and extend the same upon, along and in the streets, alleys and public places in the city of Owosso, to carry on the business of telephoning and of renting electric telephones and of operating the telephones in the city of Owosso." The remainder of the ordinance is devoted to duties, obligations, and restrictions imposed on the company, including the limit of rates heretofore stated, with a closing paragraph fixing the life of the ordinance at 30 years, "provided that said company or its assigns shall continuously operate its said telephone line in said city of Owosso and shall observe the conditions hereinbefore mentioned."

Although the bill states that defendant "during its entire existence and down until a short time previous" to commencement of this suit had followed and obeyed the "provisions of said franchise," it gives no information as to when defendant was incorporated or how long it had existed, but simply states that, as assignee of the company named in the ordinance, it "is operated under and by virtue of the terms of said franchise and ordinance." The bill contains no allegation that there is or ever was or ever will be any delinquent subscriber who has been or could be injured in purse or person by this objectionable form of account promulgated by defendant on or about October 1, 1913. Until complainant or some of those in whose behalf it alleges this bill is filed become delinquent subscribers and an attempt is made to exact the extra 50

cents from them, it is difficult to discover what injury has been or can be done by that of which this bill complains.

It is true that complainant's bill charges defendant sent statements of account to its subscribers which, as made out, imposed a rate plainly in excess of that fixed by ordinance and previously charged, which, but for the explanatory note appended, would raise a more serious question. Read, however, with the explanation appended, they became innocuous and the extra charge disappeared as to all except delinquents, and we are not advised that there were any such. Defendant's counsel assert that the extra charge of 50 cents was intended for and amounted to notice of a rule imposing a penalty on those in default, and was no intimation of a purpose to depart, otherwise, from the regular rates previously charged. Clearly such is the meaning of the communication taken as a whole. Just why defendant, in giving notice of the rule, resorted to this roundabout and apparently irritating form of notice which declared an extra charge against all on the indicated assumption that all would be delinquent, with an implied generous proposal to rebate to the regular price if by chance they paid their bills when due, may possibly be accounted for on the theory of psychological myopia, but is unimportant here, for injury to feelings cannot be recognized as a ground of equitable relief by injunction.

This bill discloses no primary injury, no threatened irreparable injury, and no person of the class who might be affected by the proposed extra charge. Courts of equity may not lend aid by injunction in the abstract, and unconnected with any injury or damage to the person or persons asking relief.

On the face of this bill the questions raised are in their nature academic, and, irrespective of other reasons urged, we are constrained to sustain defendant's

contention that the bill should be dismissed for want of disclosed equities.

The order overruling defendant's demurrer is therefore reversed, with costs.

BROOKE, C. J., and STONE and MOORE, JJ., concurred with STEERE, J.

OSTRANDER, J.  I concur in the result on the last ground discussed.

McALVAY, KUHN, and BIRD, JJ., concurred with OSTRANDER, J.