THE PEOPLE v. FRANK KIRSCH.

*Criminal law—Illegal fishing—" Harbor " defined—Constitutional law—Title of act—Repeal—Municipal corporations— Legislative power.*

1. A harbor, in its usual and ordinary sense, means an indentation in the coast of a lake, sea, or ocean, extending into the country in such a manner as to form an inlet or bay, and sufficiently narrow between the headlands to afford protection to vessels against the wind and storm upon the waters; and the word is used in *this* sense by the Legislature in the acts passed in 1879 and 1885 for the protection of fish and fisheries in this State.

2. Act No. 10, Laws of 1885, is not repealed by Act No. 61 of the same year; nor is the title to said first-named act defective.

3. No city or village can, by ordinance or by-law, make the general laws of the State inoperative; and the common council of the village of Spring Lake has no power to establish harbor lines in Grand river.

Exceptions before judgment from Ottawa.   (Arnold, J.) Argued October 27, 1887.   Decided November 10, 1887.

Respondent was convicted of unlawful fishing in Grand

river.   Affirmed, and court directed to proceed to judgment.
The facts are stated in the opinion.

*V. W. Seely*, for respondent.

*Moses Taggart*, Attorney General, and *Walter I. Lillie*, prosecuting attorney, for the People.

SHERWOOD, J.   In this case the respondent was convicted upon a complaint made before a justice of the peace of the city of Grand Haven, in the county of Ottawa, charging him with having on the ninth day of May, 1887, at the village of Spring Lake, in said county, —

"Caught and taken fish with a fyke net, so called, it being a species of continuous net, in the waters of Grand river, in this State, and not being in Lakes Michigan, Superior, Huron, St. Clair, the St. Clair and Detroit rivers, Lake Erie, and the harbors connected with said lakes, and not being a private fish-pond, contrary to the form of the statute in such case made and provided."

The cause was appealed to the Ottawa circuit, and tried with a jury before Judge Arnold, who, at the request of counsel for the people, directed a verdict against the respondent, who now asks a review in this Court.

The facts were all stipulated by counsel for the parties, and, as they stand in the record, are as follows:

"1. That the fishing alleged and set forth in the complaint and warrant herein, occurred within the corporate limits of the village of Spring Lake, on Grand river, in said county of Ottawa, and at the time and with the nets specified in said complaint and warrant; that said nets were set on the north side of said river; that, between the mouth of Grand river and the point where said nets were set, there are two bridges crossing said river, one a railroad bridge and the other a turnpike bridge, both being draw or swing bridges; that there are saw-mills located and operated on the banks of said river, east of the point where said nets were set, as follows: One at Nortonville, one at Spoonville, one at Eastmanville, and one at Jenisonville.

"2. That lake vessels are in the habit of going to Nortonville and Spoonville for cargoes of lumber, and in going to

said saw-mills said vessels are towed up; that the current of said river, at its mouth, runs out into Lake Michigan twenty-five rods beyond the piers; that the piers at the mouth of said river are about thirty-two hundred feet long, but do not extend up said river to the point where said nets were set, and do not extend within two miles of the same.

"3. That said draw or swing bridges are usually closed, and are only open when vessels pass up and down said river.

"4. That there is a river steam-boat, known as the 'Barrett,' running between Grand Haven and Grand Rapids.

"5. That vessels do not sail up said river, but are towed up; that it is not the custom of vessels coming in from Lake Michigan to go further up the river to tie up or lay up than three-quarters of a mile from the mouth, unless they are towed up, or go up for freights, except said Barrett, and that does not come from Lake Michigan.

"6. That it is three miles from the mouth of said river to the point where the nets were set; that the officer who made the arrest in this case was legally authorized to do so, and that the defendant did the fishing complained of."

Upon submitting the foregoing stipulation of facts, counsel for respondent requested the court to direct a verdict in his favor, and stated the grounds for his motion as follows:

"1. That Grand river is a common-law harbor from its mouth to Grand Rapids, or, in other words, as far up the river as lake vessels may be navigated; and therefore the defendant is not guilty.

"2. That Grand river, to the extent and point and including the place where the fishing in this case took place, is a statutory harbor, and therefore the defendant is not guilty.

"3. That by reason of Act No. 5, Laws of 1883, the defendant was permitted to fish in the manner alleged, and therefore he is not guilty.

"4. That Act No. 10, Laws of 1885, is repealed by implication by Act No. 61 of the same year, and therefore the defendant is not guilty.

"5. That Act No. 10, Laws of 1885, is unconstitutional and void, and therefore the defendant is not guilty."

The exception taken to the ruling of the court in direct-

ing the verdict against the respondent, instead of for him, raises the only question in the case.

A harbor, in its usual and ordinary sense, means an indentation in the coast of a lake, sea, or ocean, extending into the country in such manner as to form an inlet or bay, sufficiently narrow between the headlands to afford protection to vessels against the wind and storm upon the waters.   Gould, Wat. 10 ; 4 Co. Inst. 140; *Cable Co. v. Telegraph Co.*, 2 App. Cas. 394, 419 ; *Insurance Co. v. Dunham*, 11 Wall. 1; *The Fame*, 3 Mason, 147; *De Lovio v. Boit*, 2 Gall. 398; 1 Kent, Comm. 30.

It was in this sense that the Legislature used the word "harbor" in the statute applicable in this case, and this construction of the statute substantially decides the question raised.

The stipulation shows that it is not the custom of vessels from the lake to go further up the river than three-quarters of a mile from its mouth, unless in exceptional cases, and then they are towed up; that it is three miles from the mouth of the river to the point where the defendant's nets were set when he was complained of in this case; and that it is not customary for boats from the lake to go up the river more than three-quarters of a mile to tie up or lay up.

I think it clearly appears that the fishing was done by the defendant in violation of the statute; that it was done in the river, where the prohibition of the statute applies.

The prosecution is under Act No. 10, Laws of 1885, p. 9, section 1 of which reads as follows:

"That it shall not be lawful hereafter at any time to kill or destroy, or attempt to kill or destroy, any fish in any of the waters of the State of Michigan by the use or aid of dynamite, herculean or giant powder, or any other explosive substance or combination of substances, or by the use of India cockle, or any other substance or device which has a tendency to stupefy the fish; nor shall any person or persons

kill or attempt to kill, or injure by shooting or spearing, any fish, during the months of March, April, May, June, July, August, and September, in any of the waters of this State, except Lakes Michigan, Superior, Huron, St. Clair, the St. Clair and Detroit rivers, and Lake Erie, and the harbors connected with said lakes; nor shall any person catch or take any fish with seines, pound nets, trap nets, or any species of continuous nets, in any of the waters of the State, except Lakes Michigan, Superior, Huron, St. Clair, the St. Clair and Detroit rivers, and Lake Erie, and the harbors connected with said lakes," etc.

Act No. 10 is not repealed by Act No. 61, Laws of 1885, as is supposed by counsel for the defendant.

Neither do I think the law of 1885 (Act No. 10) is in violation of the Constitution on account of any defect in its title. It sufficiently states what section of the statute is amended, but, if the title should be held defective, Act No. 208, Laws of 1879, would still remain, which fully covers the case we are considering.

No city or village has the power, by ordinance or by-law, to make the general laws of the State inoperative. The power granted to the common council of Spring Lake is special. It has no power to establish harbor lines in Grand river. It cannot by ordinances encroach upon the general laws of the State.

The ruling of the court must be affirmed, and the circuit court is advised to proceed to judgment.

CHAMPLIN and MORSE, JJ., concurred.

CAMPBELL, C. J., did not sit.