STATE EX REL. CHARETTE, RELATOR, *v.* DISTRICT COURT ET AL., RESPONDENTS.

(No. 7,918.)

(Submitted January 5, 1938. Decided January 16, 1939.)

[86 Pac. (2d) 750.]

490

Mr. *George W. Howard,* for Relator, submitted a brief, and argued the cause orally.

Mr. *William B. Frame, Mr. John K. Claxton* and *Mr. H. A. Tyvand,* for Respondents, submitted a brief; *Messrs. Claxton* and *Tyvand* argued the cause orally.

MR. JUSTICE ERICKSON delivered the opinion of the court.

This matter comes before the court on an application for a writ of supervisory control, directed to the District Court of the Second Judicial District. The facts from which the application arises briefly stated are these:

The relator here, defendant below, was sued for injuries arising out of the operation of an automobile by defendant on a highway of the state and sustained by one James Currie, a minor, who brought suit by his guardian *ad litem,* John Currie. From the briefs it appears that the relator is a non-resident of the state of Montana, and that service of summons was had on him under Chapter 10, Laws of 1937. A copy of the summons together with the fee provided in that chapter were left with the secretary of state, and he mailed a copy of the summons to

the relator as provided therein. A copy of the summons together with the notice of service on the secretary of state were sent by registered mail to the last-known address of the relator, according to the plaintiff's return. The registry receipt card was returned to the plaintiff endorsed "Refused" and "Returned to writer unclaimed." · The relator appeared specially in the court below and moved to quash and set aside the service made upon him. Subsequently he made a supplemental special appearance by motion to quash the service. The motion and supplemental motion to quash were set down for hearing, and upon such hearing both motions were denied.

The pertinent parts of Chapter 10, Laws of 1937, are sections 1, 2 and 4:

"Section 1. Subject to a compliance with the motor vehicle laws of this State and the acceptance of the provisions of this Act, non-resident owners and operators of motor vehicles hereby are granted the privilege of using the highways, roads and streets of this State and its political subdivisions, and the use of such highways, roads and streets shall be deemed and construed to be an acceptance of the provisions of this Act.

"Section 2. The acceptance by a non-resident of the rights and privileges conferred by the laws of this State to use the highways, roads and streets of the state and its political subdivisions as evidenced by his operating a motor vehicle thereon shall be deemed equivalent to and construed to be an appointment by such non-resident of the secretary of state of the State of Montana to be his true and lawful attorney upon whom may be served all lawful summons and processes against him growing out of any accident, collision, or liability in which said non-resident may be involved while operating a motor vehicle upon such highways, roads or streets, and said acceptance or operation shall be a signification of his agreement that any summons or process against him which is so served shall be of the same legal force and validity as if served on him personally within the State of Montana."

"Section 4. Service of such summons or process under sections two and three shall be made by leaving a copy thereof

with a fee of two dollars ($2.00) with the secretary of state of the State of Montana, or in his office, and such service shall be sufficient and valid personal service upon the defendant.

"Provided, That notice of such service and a copy of the summons or process is forthwith sent by registered mail requiring personal delivery, by the plaintiff to the defendant and the defendant's return receipt and plaintiff's affidavit of compliance herewith are appended to the process and entered as a part of the return thereof:

"Provided, further, that personal service outside of this State in accordance with the provisions of the statutes thereof relating to a personal service of summons outside of this State shall relieve a plaintiff from mailing a copy of the summons or process by registered mail as hereinbefore provided. The secretary of state shall forthwith send one of such copies by mail, postage prepaid, addressed to the defendant at his address if known to the secretary of state. The court in which the action is brought may order such continuances as may be necessary to afford the defendant reasonable opportunity to defend the action."

We find no merit in relator's contention that the plaintiff failed to comply with the provisions of this chapter because the registry receipt filed does not bear the signature of the relator. The receipt does show that the letter containing the notice of summons was offered to the relator and that he refused to accept delivery of it. He is not in a position to complain that plaintiff failed to comply with the requirements of the statute when the relator's own wilful act prevented plaintiff's literal compliance therewith.

Nor do we see any merit in relator's argument that Chapter 10 is so uncertain and ambiguous that it is unconstitutional. The procedure set out in the Act to secure service is clear and detailed, and we find no difficulty in understanding the steps required and the applicability of the statute to the particular case.

Relator argues that since Chapter 10 provides that the service by mailing may be made by the plaintiff himself, the Act

is invalid. We see no merit in this contention. In the present instance the mailing was by the plaintiff's attorney, which, of course, was done pursuant to his employment as attorney for plaintiff, and the mailing is the plaintiff's act through the agency existing by reason of the attorney-client relationship.

Relator also argues that the Act is invalid because it does not call for delivery of the complaint to the defendant. We find no authority to support this position. The summons states where a copy of the complaint may be found, and by the summons defendant is put on notice; this constitutes due process in our opinion.

Relator seriously urges that Chapter 10 was repealed by Chapter 175 of the Laws of 1937. This latter chapter is an amendment of section 9111, Revised Codes. The only change in section 9111 by the amendment is contained in subsection 6 of Chapter 175, in which provision is made for service of summons on corporations whose charter or right to do business in the state has expired. Section 9111 provides a method of service of summons in a variety of situations, and after setting out the method of service in particular cases, provides in subsection 6 that in all other cases the defendant is to be served personally. This provision is carried forward in Chapter 175 as subsection 7. Chapter 175 carries the usual repealing clause. We do not believe that the legislature, by the passage of this chapter, intended to repeal Chapter 10. There was certainly no express repeal of Chapter 10 by specific reference to it, since no mention is made of the Chapter in either the title or body of the Act. The repealing clause does not operate as an express repeal of Chapter 10. Courts in general, in speaking of these repealing clauses, have held that they add nothing to the repealing effect of the Act of which they are a part, as without the clause all prior conflicting laws, or parts of laws, would be repealed by implication. Their chief purpose seems to be to limit the extent of the repeal effected by the Act to those laws, or parts of laws, which are actually inconsistent with the Act. (*Barden* v. *Wells,* 14 Mont. 462, 36 Pac. 1076; *Bank of British North America* v. *Cahn,* 79 Cal. 463, 21 Pac. 863; *In re Clary,*

149 Cal. 732, 87 Pac. 580; *Batchelor* v. *Palmer*, 129 Wash. 150, 224 Pac. 685.) There is then no direct repeal.

Nor is there a repeal by implication. At the passage of Chapter 10, it and section 9111, supra, stood side by side and both were in effect. Chapter 10 dealt with the subject of service of process in a specific situation and in a specific way. Section 9111, and as it was amended by Chapter 175, particularly in subsection 7, deals with the subject of service in a general, comprehensive way. Unless there is clearly and manifestly a conflict between the two Acts in question, the court will not declare that there is an implied repeal. Repeal by implication is not favored by this or any court, and every effort will be made by the courts to reconcile the Acts in question to avoid such repeal. (*Nichols* v. *School Dist. No. 3, Ravalli County*, 87 Mont. 181, 287 Pac. 624; *London Guaranty & Accident Co.* v. *Industrial Accident Board*, 82 Mont. 304, 266 Pac. 1103; *In re Naegele*, 70 Mont. 129, 224 Pac. 269; *State* v. *Bowker*, 63 Mont. 1, 205 Pac. 961.)

A conflict, if any, must be between subsection 7 of Chapter 175 and Chapter 10. This subsection provides for service in general, while Chapter 10, as stated above, deals with the service in a specific situation. The rule has often been stated that a general Act, without express words of repeal ordinarily will not repeal a previous special Act. That rule has been announced by this court in *Equitable Life Assur. Soc. of the United States* v. *Hart*, 55 Mont. 76, 173 Pac. 1062. Whether an Act, specific in nature and dealing with a specific situation, is repealed by a general one is to be determined by the legislative intention. We do not believe that it was intended by the legislature that the re-enactment in Chapter 175 of subsection 6 as subsection 7 was intended as a repeal of Chapter 10.

A further indication that the legislature did not intend to repeal Chapter 10 by the passage of Chapter 175 is the fact that the two Acts were passed in the same session of the legislature. This court has held in *State ex rel. Aachen & Munich Fire Ins. Co.* v. *Rotwitt*, 17 Mont. 41, 41 Pac. 1004, that where two Acts relating to the same subject are passed at the same session of the legislature, there is a strong presumption against

repeal. The court held to the same effect in *State ex rel. Hay* v. *Hindson*, 40 Mont. 353, 106 Pac. 362, 363.

Counsel for relator seriously contends that Chapter 10 is unconstitutional in that it is class legislation. This Act applies only to operators of motor vehicles. He urges that since it does not apply to operators of all vehicles which might use the highways, it comes within the inhibition of the rule against class legislation. The classification appears to us to be a reasonable one, based upon the fact that motor vehicles are usually driven at greater speed than other conveyances, and that the danger of injury to the users of highways in all probability will be greater.

In *Hess* v. *Pawloski*, 274 U. S. 352, 47 Sup. Ct. 632, 71 L. Ed. 1091, *Kane* v. *State of New Jersey*, 242 U. S. 160, 37 Sup. Ct. 30, 61 L. Ed. 222, 229, and *Hendrick* v. *State of Maryland*, 235 U. S. 610, 35 Sup. Ct. 140, 59 L. Ed. 385, the Supreme Court of the United States declared the classification, under a similar statute, a reasonable one and not class legislation.

Relator urges also that Chapter 10 violates the due process of law clause of both our state and the federal Constitutions. (Const., Mont., Art. III, sec. 27; U. S. C. A., Const. Amend. 14.) Under an almost exactly similar statute of Massachusetts (Chap. 90, General Laws, as amended by Statutes 1923, Chap. 431, sec. 2), the United States Supreme Court, speaking through Mr. Justice Butler in *Hess* v. *Pawloski*, supra, discussed this contention exhaustively. The facts in that case were practically the same as in the present one. A non-resident of Massachusetts operating an automobile on the highways of that state ran into and injured a person. Service of summons was made under the Massachusetts statute above cited, which provides the same method of service as does Chapter 10. The court there said: ''Motor vehicles are dangerous machines and even when skillfully and carefully operated, their use is attended by serious dangers to persons and property. In the public interest the state may make and enforce regulations reasonably calculated to promote care on the part of all, residents and non-residents alike, who use its highways. * * * It [the statute] makes no

hostile discrimination against nonresidents, but tends to put them on the same footing as residents.''

The right of the state to regulate the use of its own highways is not open to question, and the right to extend that regulation to the use of the highways by non-residents has long since been settled. (*Hendrick* v. *State of Maryland*, supra.) The regulation of the use of the highways, and the attempt here made to reduce the possibility of injuries to others resulting from the use of the highways by non-residents, is a valid exercise of the police power. The ability to enforce civil penalties is an aid to securing observance of the law. (*Hess* v. *Pawloski*, and *Kane* v. *State of New Jersey*, supra.) In the latter case the court said: ''In view of the speed of the automobile and the habits of men, we cannot say that the legislature of New Jersey was unreasonable in believing that ability to establish, by legal proceedings within the state, any financial liability of nonresident owners, was essential to public safety. * * * We know that ability to enforce criminal and civil penalties for transgression is an aid to securing observance of laws.'' We subscribe to the views expressed by the court in that case.

The district court properly denied the motions to quash. The writ is denied and the proceeding dismissed.

MR. CHIEF JUSTICE JOHNSON, ASSOCIATE JUSTICES STEWART and ANGSTMAN, and HONORABLE C. B. ELWELL, District Judge, sitting in place of MR. JUSTICE MORRIS concur.

Rehearing denied February 4, 1939.