STATE ex Rel. THOMPSON, Relator, *v.* DISTRICT COURT
ET AL., RESPONDENTS.
(No. 7,965.)
(Submitted April 24, 1939. Decided May 22, 1939.)
[91 Pac. (2d) 422.]

*Messrs. Murphy & Whitlock,* for Relator, submitted an original and a supplemental brief; *Mr. Harry Pauly,* of Counsel, argued the cause orally.

*Messrs. Mulroney & Mulroney,* for Respondents, submitted an original and a reply brief; *Mr. E. C. Mulroney* argued the cause orally.

MR. JUSTICE STEWART delivered the opinion of the court.

Pursuant to the provisions of Chapter 10, Session Laws of 1937, substituted service of process was obtained on Stanley Thompson, one of the defendants in a cause of action arising out of an automobile accident. The district court denied a motion to quash such service, and relator, father and guardian *ad litem* for Stanley Thompson, a minor, seeks by writ of supervisory control or other appropriate writ to reverse the action taken by the district court on that motion.

The accident occurred in Missoula county December 4, 1938, and defendant Stanley Thompson left the state on December 23d of that year for Arizona—apparently for reasons other than because of the accident. An action for damages was instituted in the district court February 9, 1939, and the substituted service was obtained in the manner provided by Chapter 10, supra.

Stanley Thompson was a resident of Montana at the time of the accident.

The main question for determination is whether section 3 of the Act applies to a motorist who was at the time of the accident a resident of the state, but who subsequently, before the institution of an action against him, removed from the state. If the answer to this question is in the affirmative, then *quaere:* Is Chapter 10 unconstitutional as unwarranted class legislation and in violation of the due process clauses of the state and federal Constitutions?

The Act clearly applies to nonresident owners and operators of motor vehicles, and we have recently upheld the Act as constitutional in that regard in the case of *State ex rel. Charette* v. *District Court*, 107 Mont. 489, 86 Pac. (2d) 750.

Section 3 of the Act furnishes the grounds for the controversial issue suggested above, as the main question for determination. It provides as follows: "The operation by any person, by himself or his agent, of any motor vehicle, whether registered or unregistered, and with or without a license to operate, on any public way in this State, shall be deemed equivalent to an appointment by such person of the secretary of state, or his successor in office, to be his true and lawful attorney upon whom may be served all lawful processes in any action or proceeding against him, growing out of an accident or collision in which he or his agent may be involved while operating a motor vehicle on any public way in this State, and such operation shall be a signification of an agreement by such person that any such process against him which is served upon the secretary of state or his successor in office shall be of the same force and validity as if served upon him personally. This section shall not apply in case of any cause of action, for the service of process in which provision is made by section two, nor shall it authorize service of process upon any person who may with due diligence be found and personally served with process within the State of Montana."

It is plain that section 3 expressly eliminates from consideration service of summons based on any cause of action mentioned

in section 2, which deals exclusively with nonresidents. Section 3 is also particular in its exclusion of substituted process on "any person who may with due diligence be found and personally served with process within the State of Montana." Residents domiciled in the state are clearly intended to be served personally, because in the normal course of events such a person can with reasonable diligence be found.

Section 3, having excluded nonresidents as being covered by section 2, and having made it requisite that persons who can be found with due diligence be served personally within the state, what class of motorists is then left to be covered by the Act? To state the exceptions is to answer the question. Naturally a person involved in an automobile accident who subsequent thereto, but prior to the institution of an action against him, removes from the state to live somewhere else, though he be a resident of the state at the time of the accident, is under such circumstances a person who cannot with due diligence be found and served with process in the state. The language of the statute is too plain to mean anything else.

It is ingeniously suggested by counsel for relator that section 2 of the Act covers only nonresident *operators* of motor vehicles, and that, since by section 1 the privilege of using the highways of the state and the acceptance of the provisions of the Act as a condition precedent thereto is confined to "nonresident owners and operators of motor vehicles," it is logical to suppose that the legislature intended that section 3 should apply simply to nonresident *owners,* as distinguished from operators— they not being specifically mentioned in section 2. The fallacy in this suggestion is that section 2 speaks of nonresidents operating their vehicles. It is obvious that such a nonresident could be either a nonresident owner of a car, or a nonresident operator of a car. In either event, he would be a nonresident operating a motor vehicle, and that is all the section purports to say. The further weakness in any such contention is demonstrated by the broad and all-inclusive language used at the beginning of section 3, wherein it is stated: "The operation by any person, by himself or his agent," etc. The phrase "by any person" is

certainly comprehensive enough to include *all* persons, which, of course, would naturally include residents of the state. This interpretation of the section is further fortified by the contents of the title to Chapter 10, wherein resident users of the highways are mentioned, as well as nonresident users.

Can Chapter 10 be constitutionally applied to resident users of motor vehicles who remove from the state before institution of suit against them? We have answered substantially this very question in *State ex rel. Charette* v. *District Court,* supra. True, in that proceeding we were dealing with substituted service of process on a nonresident temporarily within the boundaries of the state at the time of the accident; but the reason for upholding the Act with respect to nonresidents temporarily in the state exists with like force and effect in the case of a resident tort-feasor, who prior to suit leaves the state permanently or for an indefinite time. In either case the person sought cannot with due diligence be found and served with process within the state of Montana.

As noted in the *Charette Case,* supra, motor vehicles are dangerous machines, even when skillfully operated, and this is equally true whether the vehicle be operated by a nonresident, or a resident who before suit leaves the state. In the latter case, in so far as convenience of service of process is concerned, the resident becomes in practical effect a nonresident with relation to the purpose which Chapter 10 was enacted to subserve.

We are not disposed to depart from the views so recently announced in the *Charette Case,* regarding the constitutionality of Chapter 10 as to nonresidents, and for the foregoing reasons are of the opinion that the Chapter is likewise constitutional as to residents who leave the state, prior to institution of suit against them, to live elsewhere. The reason for the classification is the same. As stated in *Hess* v. *Pawloski,* 274 U. S. 352, 47 Sup. Ct. 632, 633, 71 L. Ed. 1091: "In the public interest the state may make and enforce regulations reasonably calculated to promote care on the part of all, residents and nonresidents alike, who use its highways. * * * It [the statute] makes no hostile discrimination against nonresidents, but

tends to put them on the same footing as residents.'' (Compare *Wood* v. *White,* 68 App. D. C. 341, 97 Fed. (2d) 646; *Suit* v. *Shailer,* (D. C.) 18 Fed. Supp. 568; *Marano* v. *Finn,* 155 Misc. 793, 281 N. Y. Supp. 440.) Related subjects to the one under consideration are exhaustively treated in *State ex rel. Cochran* v. *Lewis,* 99 A. L. R. 123, 130, and *State ex rel. Ledin* v. *Davison,* 96 A. L. R. 589, 594.

In arriving at our decision we have not had the benefit of direct precedent on the question involved. Neither briefs of counsel nor our own independent search have revealed a case where the constitutionality of an Act as broad as ours has been passed upon. The substituted service statutes of most of the jurisdictions are not broad enough to include residents who leave the state prior to institution of suit. Those of Massachusetts, New York, Ohio and Pennyslvania cover the resident situation, and possibly others do, too. In holding as we do, we are aware that the act of removing from the state prior to institution of suit would not be peculiar to defendants involved in automobile accidents, but would equally apply to other causes of action where the defendant removed from the state shortly after the cause of action arises. However, the statute under consideration is a direct attempt on the part of the legislature to cover the automobile situation, and, as we have attempted to point out, the owner or operator of a motor vehicle may justifiably be put in a special class as to the manner or place of serving process in actions based on negligence in the operation of such vehicles.

The district court properly denied the motion to quash. The writ is denied and the proceeding dismissed.

MR. CHIEF JUSTICE JOHNSON, ASSOCIATE JUSTICES MORRIS, ANGSTMAN and ERICKSON concur.