THE CITY OF BILLINGS, Plaintiff and Respondent, v. ANDREW J. HEROLD, Defendant and Appellant.

No. 9521.

Submitted October 28, 1955. Decided April 20, 1956.

296 Pac. (2d) 263.

Messrs. Sandall & Moses, Mr. Joseph P. Hennessey, Mr. Marion B. Porter, Billings, for appellant.

Mr. George J. Hutton, City Atty., and Mr. Bernard E. Longo, Billings, for respondent.

Mr. Charles F. Moses, Mr. Hutton and Mr. Longo argued orally.

MR. CHIEF JUSTICE ADAIR:

This is an appeal from a judgment of conviction entered in the district court of Yellowstone County.

*Complaint.* By complaint filed by a police officer in the po-

lice court of the City of Billings it was charged that the appellant "Andrew Herold on or about the 10th day of November, A.D. 1951, within the corporate limits of the City of Billings, in the County of Yellowstone, State of Montana, committed the crime of operating a motor vehicle while under the influence of intoxicating liquor, in that the said Andrew Herold, then and there being, did then and there on First Avenue North between 29th and 30th Streets, operate and drive a motor vehicle while under the influence of intoxicating liquor contrary to the ordinance of the City of Billings in such case made and provided."

*Ordinance.* Section 1623A of Article XVI of Traffic Ordinance No. 1839 of the City of Billings is the ordinance which the appellant was charged with violating. Passed by the city council on December 20, 1949, such city ordinance makes "Driving or operating of an automobile * * * or other motor vehicle upon or over any street, highway or public thoroughfare within the City of Billings while under the influence of intoxicating liquor, or any drug or narcotic" a misdemeanor.

Prior to and at his trial in the police court the appellant challenged the authority of the city to legislate upon the subject covered by the ordinance, contending that such ordinance is repugnant to and in conflict with the statutes and laws of the state and particularly contrary to R.C.M. 1947, sections 11-901, 31-108, 31-109, 32-1107, 32-1108, 32-1109, and 31-145. Appellant also challenged the jurisdiction of the city police court to entertain, hear, try or determine the prosecution against him. Upon the disallowance of his challenges appellant entered a plea of not guilty and was tried, convicted and sentenced to pay a fine of $100 and costs.

An appeal was taken to the district court of Yellowstone County, where, upon a trial *de novo,* appellant was again convicted of the offense charged and ordered to pay a fine of $100. This appeal is from the judgment of conviction so entered in the district court.

A municipal corporation is a body politic, created by the

██ incorporation of the people of a prescribed locality invested with *subordinate* powers of legislation to assist in the civil government of the state and to regulate and administer local and internal affairs of the community. State ex rel. McIntire v. City Council of Libby, 107 Mont. 216, 82 Pac. (2d) 587. It is a legal institution formed by charter from sovereign power for the purpose and with the authority of *subordinate* self-government and improvement in the local and internal affairs of the community. 62 C.J.S., Municipal Corporations, section 1, page 61.

*Charter.* It has long been the policy of the legislature to vest in local municipal authorities the power to determine the local affairs that affect the local community, State ex rel. McIntire v. City Council of Libby, supra, and, consistent with such policy, the Legislative Assembly of the Territory of Montana, by an Act approved March 10, 1885, entitled ''An Act to Incorporate the City of Billings'' created, organized and incorporated the City of Billings and granted it a charter. Laws of Montana, 14th Session, 1885, at pages 147 to 161.

Section 16 of Article VII of the charter provides:

''This act is declared to be a public act, and may be read in evidence in all courts of law and equity within this territory without proof.'' Laws of Montana, 14th Session, 1885, at page 158.

The state through its legislature primarily has the power to ██ control and regulate the public highways and their use. This power is an exercise of the police power of the state to protect the highways and promote the safety, peace, health, morals and general welfare of the public. 40 C.J.S., Highways, section 232, pages 240, 241. In State ex rel. Charette v. District Court, 107 Mont. 489, 497, 86 Pac. (2d) 750, this court held that the right of the state to regulate the use of its own highways is not open to question. Compare State ex rel. Thompson v. District Court, 108 Mont. 362, 91 Pac. (2d) 422.

The city streets belong to the state and the city is but the

142

█ trustee thereof. Bidlingmeyer v. City of Deer Lodge, 128 Mont. 292, 274 Pac. (2d) 821, 824.

The source of the police power of municipalities is the state. █ While the state delegates authority over the city streets to the cities yet it may, at any time, take away or revoke a part or all of the authority which it may have theretofore delegated to the cities. Bidlingmeyer v. City of Deer Lodge, supra.

In State ex rel. Rocky Mountain Bell Telephone Co. v. Mayor of Red Lodge, 30 Mont. 338, 76 Pac. 758, 760, the court said: ''The state does not surrender to municipalities entire control over its streets and highways. They are under legislative control. 'Municipal by-laws must also be in harmony with the general laws of the state, and with the provisions of the municipal charter. Whenever they come in conflict with either, the by-law must give way.' Cooley on Cons. Lims. [(7th Ed.) 278.] 'Public highways are under legislative control. * * *' People v. Eaton [100 Mich. 208], 59 N.W. 145, 24 L.R.A. 721. 'The power conferred upon incorporated towns by the general incorporation act is but a mere grant of limited power to the municipality, which it holds subject to the general laws of the state.' In re O'Brien, 29 Mont. 530, 75 Pac. 196. 'But municipal corporations are subordinate parts of the state, and invested with limited powers. The Legislature, in granting such powers, does not divest itself of any power over the inhabitants of the district which it possessed before the charter was granted.' Wilcox v. Deer Lodge County, 2 Mont. 574. 'No city or village has the power by ordinance or by-laws to make the general laws of the state inoperative.' People v. Kirsch [67 Mich. 539], 35 N.W. 157. See, also, Section 4703, Pol. Code Mont., which prescribes a limitation upon the powers of cities.'' Compare Gamewell Co. v. City of Phoenix, 9 Cir., 216 F. (2d) 928, 933, and City of Tucson v. Polar Water Co., 76 Ariz. 404, 265 Pac. (2d) 773, 774.

In Stephens v. City of Great Falls, 119 Mont. 368, 371, 175 Pac. (2d) 408, 410, this court said: ''There is no principle of law better established than that a city has no power, except such as

is conferred upon it by Legislative grant, either directly or by necessary implication. [Citing cases.] Resting as it does upon legislative grants the legislative branch of the government may, at its pleasure, modify or withdraw the power so granted. 'It may, if it chooses, repeal any charter, or any law under which municipalities may be created, and destroy any municipal corporation at its will and pleasure.' Brackman's v. City of Huntington, 126 W. Va. 21, S.E. (2d) 71, 73.''

The powers conferred on cities by the general laws of the ▮▮▮ state, to regulate the use of streets, must be construed in connection with the limitations, expressed and implied, in a particular statute, such as the Highway Code, for a city's charter or other grant of power must yield to the constitutional general laws of the state. See 37 Am. Jur., Municipal Corporations, section 279, page 907, notes 11-15; 25 Am. Jur., Highways, pages 545, 546, notes 7-16.

In 1943 the legislature enacted Chapter 198 of the Montana Session Laws of 1943, pages 370-372, entitled: ''An Act to Amend Sections 1746.1 and 1746.2 of the Revised Codes of Montana 1935, Relating to Offenses for Operating Motor Vehicles on Highways and Streets of This State While Intoxicated or Under the Influence of Intoxicating Liquor, Drug or Narcotic; Prescribing Penalties for Violation of the Provisions of This Act and for Revocation of Driver's License, and Repealing All Acts and Parts of Acts in Conflict Herewith'' which Act became effective from and after March 5, 1943.

Section 1 of Chapter 198, supra, amended section 1746.1 of the Revised Codes of Montana 1935 to read: '' 'It shall be unlawful for any person while in an intoxicated condition or under the influence of intoxicating liquor. or any drug or narcotic to drive, operate or run upon or over any highway or *street* or public thoroughfare within the State of Montana, *whether within or without a municipality,* any automobile, truck, motorcycle or any other motor vehicle.' '' Emphasis supplied.

Section 2 of Chapter 198, supra, amended section 1746.2 of the Revised Codes of Montana 1935 to read: '' 'Any person

144

driving, operating or running any such motor vehicle upon or over any highway, *street* or public thoroughfare of the State of Montana, *whether within or without a municipality* while in an intoxicated condition or under the influence of intoxicating liquor or of any drug or narcotic shall upon conviction thereof be punished by a fine of not less than fifty dollars ($50.00) nor more than three hundred dollars ($300.00), or shall be imprisoned in the county jail not less than thirty days nor more than six months, or by both such fine and imprisonment. Such fine or imprisonment shall be assessed against any such person so convicted regardless of whether or not his act or acts of omission have resulted in any damage to a person or property of any person, firm or corporation. Such conviction shall of itself forthwith operate as revocation of such driver's license to operate any motor vehicle and shall of itself render such license null and void and the person so convicted and punished shall not be eligible to apply for or receive a license to operate any motor vehicle, nor shall he be permitted to drive, run or operate any such motor vehicle, for thirty days from the date of such conviction; if that person whose license has been revoked by his conviction of a violation of this act aforesaid shall thereafter drive, run or operate upon any highway, *street* or public thoroughfare within this state, *whether within or without a municipality* any motor vehicle within the time for which his said license has been suspended or revoked, he shall upon conviction thereof be punished by a fine of not less than fifty dollars ($50.00) or more than five hundred dollars ($500.00) or by imprisonment in the county jail not less than thirty days nor more than six months, or by both such fine and imprisonment.' '' Emphasis supplied.

Also in 1943 the legislature enacted Chapter 199 of the Montana Session Laws of 1943, pages 372-388, entitled: "An Act Creating the Montana Highway Patrol Board * * * Defining and Enumerating Acts Constituting Crimes Pertaining to the Use of the Highways and the Operation of Motor Vehicles; Prescribing Penalties for Violations * * * Providing for

State Driver's Licenses and Fees Therefor  *  *  *  Providing for the Revocation of Driver's Licenses and Reasons Therefor  *  *  *  and Repealing All Other Acts and Parts of Acts in Conflict with this Act'' which Act became effective from and after March 5, 1943.

Section 8 of Chapter 188, supra, *inter alia,* provided:

"*Acts Constituting Crimes.* For the purpose of this act, the following acts committed relative to the use of the highways and the operation of motor vehicles in the State of Montana shall constitute a crime punishable by law as hereinafter provided:

"(41)  Driving or operating an automobile, truck, motorcycle or any motor vehicle upon or over any highway *or street* or public thoroughfare within the State of Montana, *whether within or without a municipality,* while under the influence of intoxicating liquor or any drug or narcotic." Emphasis supplied.

Section 9 of Chapter 199, supra, *inter alia,* provided:

*Penalties—Revocation of Driver's License.* The violation of any of the provisions of the above-mentioned sections, or other provisions of the state motor vehicle laws  *  *  *  shall be punishable as follows:  *  *  *

"For the offense of driving while under the influence of intoxicating liquor or any drug or narcotic, the offender shall be punishable as provided by Section 1746.2 of the Revised Codes of Montana, 1935, and subject to the provisions of Chapter 129 of the session laws of Montana, 1937.

"In addition to the above-mentioned penalties, upon conviction of a motor vehicle driver of any of the above-mentioned offenses, it shall be at the discretion of the justice of the peace or district court judge to revoke the driver's driving license for a period of not more than one (1) year.

"Any person driving, operating or running any motor vehicle upon or over any highway, state or public thoroughfare, of the State of Montana, whether within or without a municipality during any period of time that his driver's license is suspended or revoked or while ineligible to purchase or possess a driver's license during such period of suspension or revoca-

tion, shall be guilty of a misdemeanor and punishable by a fine of not less than ten dollars ($10.00) nor more than one hundred dollars ($100.00), and/or imprisonment in the county jail for a term of not more than sixty (60) days.

"In the event of such order of revocation, an appeal may be had to any court of competent jurisdiction for a review of the order. For the purpose of determining second or subsequent offense under the highway patrol law, the forfeiture of bail is equivalent to conviction."

In 1949 the legislature enacted Chapter 118 of the Montana Session Laws of 1949, pages 223-228, entitled "An Act to Amend Section 8 of Chapter 199 of the Session Laws of Montana of 1943, Relating to Acts Constituting Crimes in the Use of the Highways and the Operation of Motor Vehicles in the State of Montana; and Repealing All Acts and Parts of Acts in Conflict Herewith" which Act became effective on the first day of July 1949, R.C.M. 1947, section 43-507, and prior to the passage, on December 20, 1949, by the city council of Billings of section 1623A of Article XVI of Traffic Ordinance No. 1839, supra.

Section 1 of Chapter 118, supra, *inter alia,* provided:

"That Section 8 of Chapter 199 of the Session Laws of Montana of 1943, be, and the same is hereby amended to read as follows:

" 'Section 8. *Acts Constituting Crimes.* For the purpose of this act, the following acts committed relative to the use of the highways and the operation of motor vehicles in the State of Montana shall constitute a crime punishable by law as hereinafter provided: * * *

" ' '40. Driving or operating an automobile, truck, motorcycle or any other motor vehicle upon or over any highway *or street* or public thoroughfare within the State of Montana, *whether within or without a municipality,* while under the influence of intoxicating liquor or any drug or narcotic.' " Emphasis supplied.

R.C.M. 1947, section 32-1107 (originally enacted as section

1 of Chapter 166, Laws of 1929, and amended by section 1 of Chapter 198, Laws of 1943, supra), provided:

"32-1107. (1746.1) *Drunken driving prohibited.* It shall be unlawful for any person while in an intoxicated condition or under the influence of intoxicating liquor or any drug or narcotic to drive, operate or run upon or over any highway *or street* or public thoroughfare within the state of Montana, *whether within or without a municipality,* any automobile, truck, motorcycle or any other motor vehicle." Emphasis supplied.

R.C.M. 1947, section 32-1108 (originally enacted as section 3 of Chapter 166, Laws of 1929, and amended by Chapter 198, Laws of 1943, supra), provided:

"32-1108. (1746.2) *Penalty for drunken driving—revocation of license.* Any person driving, operating or running any such motor vehicle upon or over any highway, *street* or public thoroughfare of the state of Montana, *whether within or without a municipality* while in an intoxicated condition or under the influence of intoxicating liquor or of any drug or narcotic shall upon conviction thereof be punished by a fine of not less than fifty dollars ($50.00) nor more than three hundred dollars ($300.00), or shall be imprisoned in the county jail not less than thirty days nor more than six months, or by both such fine and imprisonment. Such fine or imprisonment shall be assessed against any such person so convicted regardless of whether or not his act or acts or omission have resulted in any damage to a person or property of any person, firm or corporation. Such conviction shall of itself forthwith operate as revocation of such driver's license to operate any motor vehicle and shall of itself render such license null and void and the person so convicted and punished shall not be eligible to apply for or receive a license to operate any motor vehicle, nor shall he be permitted to drive, run or operate any such motor vehicle, for thirty days from the date of such conviction; if that person whose license has been revoked by his conviction of a violation of this act aforesaid shall thereafter drive, run or operate upon any highway, *street* or public thoroughfare with-

in this state, *whether within or without a municipality* any motor vehicle within the time for which his said license has been suspended or revoked, he shall upon conviction thereof be punished by a fine of not less than fifty dollars ($50.00) or more than five hundred dollars ($500.00) or by imprisonment in the county jail not less than thirty days nor more than six months, or by both such fine and imprisonment." Emphasis supplied.

R.C.M. 1947, section 32-1109 (originally enacted as section 4 of Chapter 166, Laws of 1929), provided:

"32-1109. (1746.3) *Additional penalties.* In addition to the penalties heretofore provided, any person convicted of a violation of this act shall be subject to the following penalties:

"(1) For the first offense the motor vehicle being driven in such violation, if owned by the convicted person, shall not be used by such person for a period not less than thirty days, nor more than six months; provided, however, that nothing in this section shall prevent any member of his family or other person from operating or driving such motor vehicle.

"(2) For the second offense the motor vehicle driven in committing such second offense, if owned by the convicted person, shall not be used by himself or any member of his family for any purpose whatsoever, for not less than six months, nor more than one year; provided, however, that the court may within its discretion permit other members of the family of such convicted person or any other person to operate or drive such motor vehicle.

"(3) Where the foregoing additional penalties of this section are imposed by judgment of any court it shall be the duty of the court imposing such penalty to give notice to the registrar of motor vehicles of the entry of such judgment."

R.C.M. 1947, sections 32-1107, 32-1108 and 32-1109, and subdivision 40 of section 1 of Chapter 118, Laws of 1949, supra, were in full force and effect on November 10, 1951, the date whereon it is charged the appellant violated section 1673 A of Article XVI of the city's Traffic Ordinance No. 1839, supra, and such statutes and sections of the Montana Codes were ex-

pressly made applicable to violations occurring on the *streets,* highways or public thoroughfares in the state and *"whether within or without a municipality."*

The charter granted by the legislature purporting to define ■ the powers and duties of the city council and mayor in managing the affairs of the City of Billings nowhere attempts to confer any power or authority upon the city council to enact an ordinance regulating or relating to the operation or driving of vehicles by persons while in an intoxicated condition or under the influence of intoxicating liquor or any drug or narcotic. Laws of Montana, 14th Session, 1885, at pages 147-161.

There is no provision of the state Constitution that grants to cities or towns the authority or power to adopt ordinances creating the offense and prescribing the punishment for the operating or driving of motor vehicles on the highways, streets or public thoroughfares while under the influence of intoxicating liquor or drugs, where as here, the matter is already covered by a valid state statute.

In State v. Mandehr, 168 Minn. 139, 209 N.W. 750, 751, in applying an express statute denying the municipality such authority the court said: "The true purpose of all municipal ordinances is to regulate local affairs. The sobriety of drivers of motor vehicles is not a local affair. It is a matter of concern to all the people of the state. A driver under the influence of intoxicating liquor is a menace to every one who happens to be on the road or street while he is at large. It is true that he is a greater menace when he selects a busy street as a driveway instead of a remote country road. * * *

"It is too clear for argument that to drive a motor vehicle is to use it, and the conclusion follows that Mandehr's conviction was unauthorized for the reason that the ordinance had been superseded by the statute. In reaching this conclusion, we have consulted with profit Helmer v. Superior Court, 48 Cal. App. 140, 191 Pac. 1001, and City of Buffalo v. Lewis, 192 N.Y. [193] 199, 84 N.E. 809."

Helmer v. Superior Court, 48 Cal. App. 140, 191 Pac. 1001,

holds the drunken driving provision in the state's Motor Vehicle Act prevails over a city ordinance. There the court said: "The regulation of street traffic has usually in the near past been treated as a municipal matter. Until the advent of the automobile, interurban traffic was so small as to be negligible and, as a result, traffic regulations were a matter of concern only to the inhabitants of the city. But when autos and motortrucks invaded our highways and streets in tens and hundreds of thousands, a matter that yesterday was local has become of state and nationwide importance today. * * *

"It is true that the ordinances of a city are supreme in 'municipal affairs.' But the act charged against petitioner is not a 'municipal affair.' This is so even if the claim is sound that ordinances designed to control the use of streets prevail over general laws. The act of driving a motor vehicle while under the influence of intoxicating liquors is of no immediate or special concern to the city as such. It is of general concern to the inhabitants of a city in common with all other residents of the state. There exists a doubtful or twilight zone separating those matters that are clearly of municipal concern from those that are not. This doubtful zone is of greater or less width, according to the viewpoint of the observer, but there seems to be no satisfactory reason for assigning the act in question to this doubtful zone. It is not a 'municipal affair.' * * *

"The drunken driver is a danger in any locality, if there are persons present to be injured.

"The fact that he is a menace to life and to private property justifies the state in prescribing penalties for the act, just as it may do for violations of general sanitary, health and comfort laws. A manslaughter committed by an intoxicated driver in driving his vehicle over a victim is as much punishable by the state when committed on the streets of a city as if committed elsewhere. A vast number of acts are made punishable by the Penal Code because their commission involves a general menace to the public, even though in their commission no person is injured. It is a felony for an intoxicated trainman to

run a railroad train. A druggist must take certain precautions in selling poisonous drugs. It is a misdemeanor to carry concealed weapons or to leave a campfire burning and unattended. These cases and dozens of others that could be enumerated demonstrate that the state, in the exercise of its sovereign power and for the protection of its people, has authority to interdict on the public highways in every part of the state the driving of a motor or other vehicle by an intoxicated person. It is a fundamental rule that the state may by appropriate penalties protect life, liberty, property, and the public peace in every part of its territory; and, except as to matters of purely municipal concern, it may extend this protection to the denizens of crowded cities the same as to those in rural districts.''

In Clayton v. State, 38 Ariz. 135, 297 Pac. 1037, 1039, it is said:

''We have this situation: The sovereign state and one of its agencies, the city of Phoenix, have legislated upon the identical subject-matter, for the same purpose, to wit, to secure the safety of travel upon the highways of the state. The prohibition in the city ordinance and in the statute is not against inebriety, but against driving on the highways while under the influence of liquor. The provisions in each are primarily regulatory, the punitive feature being incidental. Their purpose is to secure safe driving of a very dangerous instrumentality, which is not regarded as possible when the driver's condition is influenced by intoxicating liquor. Have these two jurisdictions concurrent power to legislate on the same subject-matter, as they have done? There is no question about the state's right. The state, acting through its Legislature, has plenary power over the highways of the state, including those within cities and towns. * * *

''If * * * a city by-law is not about a matter of municipal concern but a matter of general statewide concern, it would not be a 'rightful subject' of legislation, as defined by the general grant of power in the charter. The police power inheres in the state and not in its municipalities. The latter are agen-

cies of the state and exercise police and other powers only by grant given either directly or by necessary implication. We think the broad grant of powers contained in sections 1 and 2, chapter IV of the charter, should be, and was intended to be, limited to by-laws concerning purely municipal affairs.

"Who, then, determines whether the use of the streets and highways of the city by a person under the influence of intoxicating liquor is of general statewide concern or of purely municipal concern? Shall the city be permitted to determine this question, or shall the state? * * *

"We have already seen that the state Legislature in the Highway Code * * * has assumed 'to regulate the operation of vehicles on highways, and promote the convenience and safety of highway travel' and 'to provide penalties for violations of the provisions of this act.'

"While the Highway Code in many respects, as is shown by our analysis thereof, has delegated or left to municipalities certain powers over their streets and highways, it has by most direct and positive provision of drivers of motor vehicles in the use of the highways of the state, including those in cities and towns. * * *

"We think the power therein conferred 'to regulate the use' of streets, alleys, etc., must be construed in connection with the limitations expressed and implied in the Highway Code. The latter has declared who may drive motor vehicles upon the highways of the state; has provided for their licensing * * * and the grounds upon which their licenses may be revoked * * *, naming as one of such grounds the driving of a motor vehicle while under the influence of intoxicating liquor, and under section 1688 has made it an offense to drive while in such condition. In other words, the Legislature in the Highway Code has made all of these things, as to the qualification or fitness of motor vehicle drivers and their punishment for infractions of the regulations therein prescribed, 'state affairs,' taking from municipalities the power to legislate thereon as effectively as if directly prohibited to them. * * *

"We conclude that the Legislature in the Highway Code has determined that the sobriety or insobriety of a motor vehicle driver on the public highways of the state is a matter of state-wide policy and concern, and that it was desirable that the rule with reference to such driver should be uniform throughout the state.

"It follows, then, that section 55 of Ordinance No. 1492 of the city of Phoenix is invalid and that the court was without jurisdiction of the defendant or the subject-matter."

In Jenkins v. Jones, 209 Ga. 758 at pages 759, 760, 75 S.E. (2d) 815, 817, the court said: "Code, section 68-307, which makes it a misdemeanor to operate a motor vehicle on the streets and highways of Georgia while under the influence of intoxicating liquors, or drugs, has been a law of general operation since 1910. Ga. L. 1910, pages 90, 93; Id. 1927, pages 226, 238; 1947, page 230. The municipal ordinance here under consideration deals with the same subject matter, viz., operating a motor vehicle on the highways or streets in the City of Atlanta while under the influence of intoxicating liquors or drugs, and does not introduce any ingredient or concomitant esseitial to the preservation of the city's peace, health, or good order which is not included in Code, section 68-307. Where a municipal ordinance and a public criminal statute operate upon the same state of physical acts, the ordinance is invalid unless the offense created thereby contains some characterizing ingredient not contained in the State offense. [Citing cases.] A municipal ordinance punishing an act made penal by a State law then existing, covering the same subject matter, must yield to the State law. [Citing case.] 'Where both the ordinance and the state law exist, covering the same act and same offense, the offender cannot be put in jeopardy twice for the same offense under the ordinance and under the state law. In such case he could only be punished for a violation of the state law.' Mayo v. Williams, 146 Ga. 650, 652, 92 S.E. 59, 60." Also see Commonwealth of Pennsylvania v. Nelson, 76 S.Ct. 477.

In the instant case the state acting through its legislature

has plenary power over the streets and highways of the state *"whether within or without a municipality."* The state has exercised that power and, by the resulting statutes, has clearly shown that it deems the use of the streets and highways by a person under the influence of intoxicating liquor or drugs to be a matter of general statewide concern rather than a purely local municipal problem. The city was without the essential authority or power to pass or adopt the ordinance. Such ordinance is therefore void and the trial court was without jurisdiction of the appellant or the subject matter. See Clayton v. State, supra; Canard v. State, 174 Ark. 918, 298 S.W. 24; Helmer v. Superior Court, supra; Jenkins v. Jones, supra; Ayres v. City of Chicago, 239 Ill. 237, 87 N.E. 1073; State v. Mandehr, supra; City of Buffalo v. Lewis, 192 N.Y. 193, 84 N.E. 809; City of Fargo v. Glaser, 62 N.D. 673, 244 N.W. 905. Compare Dietrich v. City of Deer Lodge, 124 Mont. 8, 218 Pac. (2d) 708; State ex rel. McCarten v. Corwin, 119 Mont. 520, 177 Pac. (2d) 189; State v. Schnell, 107 Mont. 579, 88 Pac. (2d) 19, 121 A..R. 1082, and Stephens v. City of Great Falls, 119 Mont. 368, 175 Pac. (2d) 408.

The appellant should have been charged and prosecuted under the valid enactments of the legislature. He may not be prosecuted under the invalid city ordinance and his timely challenges to the complaint and to the jurisdiction of the lower courts to prosecute or try him under the ordinance should have been allowed.

Accordingly the judgment of the district court is reversed and the complaint is dismissed.

MR. JUSTICES ANDERSON, DAVIS and BOTTOMLY, concur.

MR. JUSTICE ANGSTMAN: (dissenting).

I think the judgment of the district court should be affirmed.

The question presented is one of statutory construction. The majority opinion on this point is double barreled. It holds, first,

that the city never had the authority or power to pass an ordinance prohibiting the driving of an automobile on its streets by one under the influence of intoxicating liquor, and, second, if it ever had the power it had been taken away.

I concede that if either of these propositions is sound then the conclusion reached by my associates is correct. In my opinion, however, the city does have that power and it had not been taken away from the city at the time defendant is alleged to have committed the offense and at the time he was convicted.

Section 11-901 gives the city council the power to "make and pass all by-laws, ordinances, orders, and resolutions, not repugnant to the constitution of the United States or of the state of Montana, or of the provisions of this title, necessary for the government or management of the affairs of a city or town, for the execution of the powers vested in the body corporate, and for carrying into effect the provisions of this title."

And section 11-911 gives the city council power to "regulate and prohibit traffic and sales upon the streets, sidewalks, and public grounds." And under section 11-1002 power is given "to regulate motor vehicles and their speed within the limits of such city or town, and to prescribe and enforce fines and penalties for violation of such regulations." And section 32-1101 in part provides that "cities and towns may, by ordinance, regulate speed and traffic upon the streets within the incorporated limits." Certainly the power to regulate motor vehicles and traffic upon the streets carries the power to prohibit automobiles being driven on the streets by persons under the influence of intoxicating liquor.

This court in speaking of what is now section 11-901 in City of Helena v. Kent, 32 Mont. 279, 80 Pac. 258, 259, said: "In effect, these provisions state what is usually determined the 'general welfare clause,' and under such clause it is well established that, in the absence of statutory prohibition, the city, in the exercise of its police power, may 'establish all suitable ordinances for administering the government of the city, the maintenance of peace and order, the preservation of the health of the inhabi-

tants, and the convenient transaction of business within its limits, and for the performance of the general duties required by law of municipal corporations.' McQuillin, Municipal Ordinances, section 434." Section 11-901 deals directly with the health and general welfare of the people of the municipality. Salt Lake City v. Kusse, 97 Utah 97, 85 Pac. (2d) 802.

In the annotation in 147 A.L.R. 566, the author states: "As shown in the cases set out below, the fact that the state has legislated upon or penalized the offense of operating a motor vehicle while under the influence of intoxicating liquor will not necessarily preclude a municipality from enacting valid ordinances punishing the identical offense, particularly where, as in some jurisdictions, municipalities are expressly authorized by statute or charter to make rules and regulations affecting motor vehicles, or to make and enforce reasonable traffic regulations; however, in some cases such an ordinance has been held invalid as in. conflict with the prevailing statutes." And see to the same effect, State ex rel. Coffin v. McCall, 58 N.M. 534, 273 Pac. (2d) 642; Mares v. Kool, 51 N.M. 36, 177 Pac. (2d) 532; State v. Poynter, 70 Idaho 438, 220 Pac. (2d) 386.

There is no valid objection to legislation by the city and state on the same subject. State ex rel. Brooks v. Cook, 84 Mont. 478, 276 Pac. 958. The rule is well settled that the fact the state legislates on a given field does not deprive the city of power to deal with the same subject matter by ordinance. 62 C.J.S., Municipal Corporations, section 143, page 286. Under such circumstances each offense is separate and each is committed against a different law and against a different sovereign. 15 Am. Jur., Criminal Law, section 398, page 71; and see cases cited in the annotation in 21 Ann. Cases 67.

But my associates hold that the right of the city to enact an ordinance prohibiting the driving of an automobile on the city streets while under the influence of intoxicating liquor was taken away when the state undertook to legislate in this field and particularly since the state statutes expressly cover a situation whether within or without a. municipality. This is not

so as many of the above cited cases hold. I call attention particularly to the case of Salt Lake City v. Kusse, supra. In that case two of the justices (only four justices participated in the case) distinguished most of the cases relied on in the majority opinion herein as not being applicable to statutes such as we had at the time of the acts herein involved. The cases generally hold that a municipality may legislate upon the subject of operating a motor vehicle while under the influence of intoxicating liquor even though the state has legislated on the same subject. State v. Poynter, supra; State ex rel. Coffin v. McCall, supra; Mares v. Kool, supra; Dane County v. Bloomfield, 267 Wis 193, 64 N.W. (2d) 829; State v. Hughes, 182 Minn. 144, 233 N.W. 874; Kistler v. City of Warren, 58 Ohio App. 531, 16 N.E. (2d) 948.

In passing I call attention to the fact that the rule declared in State v. Mandehr, 168 Minn. 139, 209 N.W. 750, and quoted from extensively in the majority opinion is no longer the rule in Minnesota, as appears from State v. Hughes, supra.

The question resolves itself into that of whether the state has "appropriated the field" "to the exclusion of others" as in the case of Clayton v. State, 38 Ariz. 135, 397 Pac. 1037, 300 Pac. 1010, so strongly relied on in the majority opinion, as pointed out by two of the justices in Salt Lake City v. Kusse, supra. I think it did not do so and that the legislature itself in 1947 recognized that it had not done so, for in section 31-145 it states in part: "Every court having jurisdiction over offenses committed under this act, or any other act of this state *or municipal ordinance regulating the operation of motor vehicles* on highways, shall forward to the board a record of the conviction of any person in said court for a violation of any said laws other than regulations governing standing or parking, and may recommend the suspension of the operator's or chauffeur's license" of the person so convicted. Italics supplied. And section 31-146 provides in part that the board (meaning the highway patrol board) "shall forthwith revoke the license of any operator or chauffeur upon receiving a record of such

\* \* \* conviction of any of the following offenses \* \* \* 2. Driving a motor vehicle while under the influence of intoxicating liquor or a narcotic drug.''

These sections constitute a plain legislative declaration that prosecutions under municipal ordinances regulating the operation of motor vehicles on highways and particularly for driving while under the influence of intoxicating liquor, are permissible. Such was the law at the time defendant was alleged to have violated the ordinance and at the time he was convicted.

I point out that since then the legislature has passed Chapter 263, Laws of 1955, which seemingly takes from the city all powers except certain specifically enumerated ones. But that statute has no application here. Also there is here involved no question of double jeopardy. This is the first, and, as far as we know, the only prosecution directed against defendant.

I think the district court was right and that the judgment should be affirmed.